**Meredith Trent CREEKMORE**

v.

**ATTORNEY GENERAL OF TEXAS, Sheriff of Jefferson County, Chief of Police of the City of Beaumont, and Thomas A. Davis, in his official capacity as the director of the Texas Department of Public Safety**

No. 1:00–CV–264.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 30, 2004.

Robert Charles Griffin, Shimon Kaplan, East Texas Legal Services Inc., Beaumont, TX, for Plaintiff.

Robert B. Maddox, Austin, TX, Richard F. Baker, Dean Jerome Johnson, Beaumont, TX, for Defendants.

## *OPINION RE MOTIONS FOR SUMMARY JUDGMENT*

This action is before the undersigned for trial and entry of judgment by written consent of all parties.

This opinion states the court's reasons underlying its disposition of competing motions for summary judgment.[1] It also constitutes findings of fact and conclusions of law for purposes of Rules 52 and 65, Federal Rules of Civil Procedure.

### I. NATURE OF CASE

Meredith Trent Creekmore indulged "urges" through despicable sexual abuse of

---

1. The motions are:
 1. "Plaintiff's Motion For Summary Judgment" (Docket No. 85);
 2. "Defendant Chief of Police's Motion For Summary Judgment" (Docket No. 74); and
 3. "Defendant Abbott And Davis' Motion For Summary Judgment" (Docket No. 75)

his daughter when she was two to four years of age.[2] With a level of gall that doesn't compute, he objects to registering as a sex offender.

The sheriff of Jefferson County, Texas, required Creekmore to register shortly after he discharged a federal prison sentence. Creekmore perceives that action, together with attendant public notification, as violating a laundry list of federal and state constitutional rights. Proceeding *in forma pauperis*—and represented by Legal Aid attorneys—Creekmore now seeks a declaration that the Texas Sex Offender Registration Program (TSORP) violates his constitutional rights. He also requests an injunction preventing the Attorney General of Texas; the Sheriff of Jefferson County, Texas; the Chief of Police for the City of Beaumont, Texas; and the Director of the Texas Department of Public Safety (TDPS) from enforcing the Texas program with respect to him.[3]

## II. FACTUAL BACKGROUND

Creekmore was a member of the United States armed forces and stationed at Ft. Sill, Oklahoma, when he engaged in the abhorrent conduct described earlier. His iniquity was discovered and punished. He was convicted in a general court martial of several sex offenses under the Uniform Code of Military Justice (UCMJ).[4] He received a sentence of six years in the custody of the United States Department of Justice, Bureau of Prisons (BOP).

Creekmore satisfied this sentence after serving a term of three years and ten months. He was released from the Federal Correctional Complex in Beaumont, Jefferson County, Texas, and thereafter resides in Beaumont, located within the territorial jurisdiction of this court.

Federal prison officials notified Creekmore that he was subject to registration as a sex offender *"in any state in which you reside, are employed, carry on a vocation, or are a student."* Fed. Correctional Inst.-Low Security, Beaumont, *Sex Offender Registration and Treatment Notification*, REG. No. 05243–000 (Dec. 14, 1998) (italics added).[5] BOP officials further notified local law enforcement agencies of Creekmore's impending discharge and of his federal convictions. That notice in-

2. Between January 1, 1993, through November 30, 1993, on more than one occasion, Creekmore placed his finger on the vaginal area of his daughter to gratify his lust. He also penetrated the vagina of his daughter with his finger about half an inch with intent to gratify his lust. His daughter displayed a facial expression indicating that this action made her uncomfortable. He further rubbed his daughter's vaginal area with his erect penis to gratify his lust. During the period December 1, 1994 through March 31, 1995, he again penetrated his daughter's vagina with his finger with intent to gratify his lust. During the period July 1—31, 1995, he did bodily harm to his daughter by pulling off her panties, putting his penis between her legs, rubbing his penis on her vaginal area for about two minutes while feeling resistance or pressure over the length of his penis, and continued until her vaginal area felt moist, all with intent to gratify his lust. (*See* transcript of trial by general court martial, attached as

exhibit to Plaintiff's Brief Regarding the Court's Subject Matter Jurisdiction, pages 19–33 (Docket No.42).)

3. The Attorney General of Texas is Hon. Greg Abbott. The Sheriff of Jefferson County is Hon. G. Mitch Woods. The Chief of Police for Beaumont, Texas, is Thomas Scofield. The Director for the Texas Department of Public Safety is Thomas A. Davis. Greg Abbott was not Attorney General when suit was filed. He is substituted as a party under Rule 25(d), Federal Rules of Civil Procedure.

4. One count (specification) of indecent assault and four counts of indecent acts with a minor under Article 134 of the Uniform Code of Military Justice, codified at 10 U.S.C. §§ 801–946.

5. *See* Exh. E to Chief of Police's Brief re: "Standing" and in Support of his Motion to Dismiss.

formed local authorities that *"[t]his individual is subject to registration as a sex offender under federal law."* Fed. Bureau of Prisons, *Sex Offender Release Notification (CDFRM)*, REG. No. PS 5141.02 (Dec. 9, 1999) (italics added).[6]

Creekmore was released on December 23, 1999, but he ignored his pre-release instructions to register. After more than a month, a Jefferson County sheriff's office employee notified Creekmore by formal letter that he was required to register.[7] The letter informed Creekmore that he was required to register *"[p]ursuant to Chapter 62 of the State of Texas Code of Criminal Procedures (sic) and in accordance with the provisions of 18 U.S.C. s 4042 © (sic)."* The letter also stated *"[Y]ou have been convicted of several sexual offenses which makes your registration a mandatory requirement every ninety-(90) days for the rest of your life."* Finally, the letter established a deadline for compliance, and advised that continued refusal to comply would constitute a third degree felony punishable with state jail time of up to ten years.[8]

Creekmore stalled again. He instituted suit *pro se* in state district court seeking an order restraining the Jefferson County sheriff from requiring him to register. Creekmore's application for temporary restraining order was heard and denied by written order. *See Meredith Trent Creekmore v. G. Mitch Woods, et al., Sheriff Jefferson County, Texas*, No. A–162, 151,

58th Judicial District Court of Jefferson County, Texas (order entered February 2, 2000).

Creekmore then registered under protest, dismissed his *pro se* state court action, and brought this federal action with assistance of counsel.

### III. TEXAS SEX OFFENDER REGISTRATION PROGRAM

*"If you like laws and sausages, you should never watch either one being made."*

 — attributed to Otto Von Bismarck

One unfamiliar with American democracy and its unique concept of dual sovereigns would never suspect that the Texas Sex Offender Registration Program is a practical mechanism for obtaining federal funding for a variety of state and local law enforcement activities. 42 U.S.C. § 14071(g) and § 3756. This strange-but-true phenomenon emanates from federal statutes establishing a national policy favoring registry of sex offenders and community notification, and prodding individual states to enact sex offender registries by threatening a loss of ten percent of the funds that otherwise would be available.

These federal statutes are known by their popular names as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Wetterling Act),[9] "Megan's Law",[10] the Pam Ly-

---

**6.** *See* Exh. E to Chief of Police's Brief re: "Standing" and in Support of his Motion to Dismiss.

**7.** *See* Letter from R. Boles to Creekmore of Jan. 24, 2000, Exh. A attached to original complaint.

**8.** Texas Code of Criminal Procedure art. 62.10 provides that a person who is required to register but fails to do so commits a state jail felony of the third degree. Moreover, if that person is required to verify that registra-

tion every ninety days for the remainder of his life but fails to do so, he commits a state jail felony of the second degree. Tex.Code Crim. Proc. Ann. art. 62.10(a) & (b)(3) (Vernon Supp.2000).

**9.** Pub.L. No. 103–322, § 170101, 108 Stat. 1796 (1994) (codified as 42 U.S.C. § 14071).

**10.** Pub.L. No. 104–145, 110 Stat. 1345 (1996) (codified as amended at 42 U.S.C. § 14071(d)).

chner Sexual Offender Tracking and Identification Act of 1996 (Lychner Act),[11] and Protection of Children from Sexual Predators Act of 1998.[12] A comprehensive survey of the evolution of federal requirements for state registration programs was stated in an earlier opinion. *See Creekmore v. Attorney General of Texas*, 116 F.Supp.2d 767, 773–775 (E.D.Tex., 2000) (*Creekmore I*).

To be eligible for full funding, a state registration program must survive a United States Department of Justice review. Congress directed the Department of Justice to develop minimum standards—derived from federal statutes—for state programs. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub.L. No. 103–322 § 170101, 108 Stat. 1796 (1994) (codified at 42 U.S.C. § 14071). The Department of Justice reviews each program, and must certify it as compliant with minimum requirements before the state becomes eligible for a full measure of this federal subsidy. 42 U.S.C. § 14071(g).

Texas enacted its program in 1991.[13] Texas subsequently amended its program

four times: in 1993,[14] 1995,[15] 1997,[16] and 1999[17] to insure that the program met minimum federal requirements. Under TSORP, persons with a reportable conviction or adjudication for certain sex-related offenses must register with the local law enforcement authority where they reside or intend to reside for more than seven days.[18] Registration requires offenders to provide, *inter alia*, their full name, date of birth, sex, race, physical description, social security number, driver's license number, home address, photograph, and fingerprints.[19] Generally, persons with reportable convictions must register annually for ten years.[20] Persons convicted of a sexually violent offense must register annually for life.[21] Persons convicted two or more times for sexually violent offenses must register for life, and must report to the local law enforcement authority at least once every ninety days.[22]

TSORP requires TDPS to maintain a computerized central database containing information required for registration.[23] The information contained in the database is public information, available upon writ-

11. Pub.L. No. 104–236, § 170102, 110 Stat. 3093 (1996) (codified as amended at 42 U.S.C. § 14072).

12. Pub.L. No. 105–314, 112 Stat. 2974, 2985 (1998) (codified as amended at 42 U.S.C. § 14071).

13. *See* Act effective Sep. 1, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Texas Sess. Law Serv.2029–32.

14. *See* Act effective Aug. 30, 1993, 73d Leg., R.S., ch. 866, § 1, 1993 Texas Sess. Law Serv. 3423.

15. *See* Act effective Sep. 1, 1995, 74th Leg., R.S., ch. 258, § 1, 1995 Texas Sess. Law Serv. 2197.

16. *See* Act effective Sep. 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Texas Sess. Law Serv. 2253.

17. *See* Act effective Sep. 1, 1999, 76th Leg., R.S., ch. 444, § 1, 1999 Texas Sess. Law Serv. 2824; Act effective June 18, 1999, 76th Leg., R.S., ch. 791, § 1, 1999 Texas Sess. Law Serv. 3415; Act effective Sep. 1, 1999, 76th Leg., R.S., ch. 1415, §§ 7–18, 1999 Texas Sess. Law Serv. 4831; Act effective Aug. 30, 1999, 76th Leg., R.S., ch. 1557, § 1, 1999 Texas Sess. Law Serv. 5354.

18. *See* Tex.Code Crim. Proc. Ann. art. 62.02(a) (Vernon Supp.2004).

19. *Id.* 62.02(b).

20. *Id.* 62.12(b).

21. *Id.* 62.12.

22. *Id.* 62.06(a) and 62.12(a).

23. *Id.* 62.08(a).

ten request.[24] The statute mandates that this information, including a recent photograph, must be available on the Internet. Tex.Code Crim. Proc. Ann. art. 62.08(c) (Vernon Supp.2004).

Article 62.01(J) declares that UCMJ offenses with elements substantially similar to elements of Texas offenses listed under Paragraph (A)—(E) and (G) of Article 62.01(5) are reportable. Unfortunately, TSORP does not list UCMJ offenses that meet this requirement. Moreover, when Creekmore registered, TSORP did not designate an entity for making those determinations, nor did it provide process whereby potential registrants could be heard in the matter.

During pendency of this suit—perhaps in response to it—Texas further amended TSORP in two respects. First, Article 62.0101, enacted in 2001, delegates to the TDPS the responsibility for determining whether a UCMJ offense contains elements substantially similar to elements of a Texas offense. It further provides that an appeal of such determinations may be brought in a district court in Travis County, Texas. Second, Article 62.021, amended in 2001 and 2003, now requires that any person required to register as a sex offender *under federal law or the Uniform Code of Military Justice* must register in Texas if not otherwise required to register under TSORP.

## IV. PRIOR PROCEEDINGS

### A. Initial Proceedings

Following an early status conference, the court addressed the issue of its subject-matter jurisdiction *sua sponte.*[25] The court ultimately determined that a justiciable controversy existed, and that the plaintiff had standing to assert the claims contained in his complaint. *Creekmore I,* 116 F.Supp.2d at 776.

Once jurisdiction was settled, plaintiff's attorney in charge candidly informed the court that he considered plaintiff's strongest claim to be based on denial of procedural due process. Counsel invited the court to address that issue first, as it might moot remaining claims. The court accepted that invitation.

Counsel for all parties agreed that the court should analyze plaintiff's procedural due process claim under a "stigma plus infringement" test to determine whether due process implications arise from stigmatizing conduct by state officials.[26] Applying that test, the court eventually determined that plaintiff's complaint fails to allege facts implicating a protected liberty interest. The court concluded that plain-

---

24. *Id.* 62.08(b) and (c).

25. At an early hearing on June 29, 2000, the court sought to determine whether a justiciable case or controversy was at issue, rather than mere ideological differences. The court asked whether Creekmore contended that the elements of his UCMJ offenses were not substantially similar to elements of Texas offenses that require registration. Creekmore's Counsel responded:

*I don't even know exactly what substantially similarity means ... I really do not know. That decision has to be made at the initial stage by the state. I do have some doubts about what is substantially similar.*

Audio tape: Status Conference (June 29, 2000)(Docket No. 30).

26. The "stigma plus infringement" test is derived from *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley,* 500 U.S. 226, 233–35, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *State of Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995); and *Marrero v. City of Hialeah,* 625 F.2d 499, 513–519 (5th Cir.1980). *See also Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir.1995); *San Jacinto Savings & Loan v. Kacal,* 928 F.2d 697, 701–702 (5th Cir.1991).

tiff failed to show that defendants' statements were false in every instance save one, and in that instance, failed to prove that defendants' false statement infringed upon or damaged an interest more tangible than reputation alone. Accordingly, the court granted defendants' motions to dismiss plaintiff's procedural due process claims. *See Creekmore v. Attorney General of Texas, et al.,* 138 F.Supp.2d 795 (E.D.Tex.2001) (*Creekmore II* ).

## B. Interlocutory Appeal

The court believed that its decision dismissing plaintiff's procedural due process claim involved a controlling question of law, and that there was substantial ground for difference of opinion on that question. The court determined, therefore, that an immediate appeal from that order might materially advance ultimate termination of the litigation. The court stated these opinions in writing in order that plaintiff might seek leave to appeal an interlocutory decision pursuant to 28 U.S.C. § 1292.

The Fifth Circuit Court of Appeals granted leave to appeal, and the parties filed briefs. After the matter was before the court for some time, however, the Fifth Circuit vacated its order granting leave to appeal, and remanded the case to this court for further proceedings. The only reason the Fifth Circuit gave was:

> *In light of the amendment of the Texas law at issue, Creekmore cannot demonstrate that an immediate appeal from the order would materially advance the ultimate termination of the litigation.*

*Creekmore v. Attorney General of Texas,* No. 01–40587 (5th Cir. Mar. 15, 2002) (*Creekmore III* ); 34 Fed. Appx. 151 (5th Cir.2002).

## C. Proceedings Upon Remand

After remand, the United States Supreme Court granted petitions for a writ of certiorari in two separate cases challenging state sex offender registration programs on Due Process and Ex Post Facto grounds. Issues in those cases appeared similar to issues in this action. Without objection, the Court stayed further action pending Supreme Court rulings. *See Advisory and Administrative Order,* October 31, 2002, (Docket No. 64).

The Supreme Court ruled in both cases on March 5, 2003. In *Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 2, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the Court held that the Due Process Clause does not entitle sex offenders to individualized hearings to determine whether they are currently dangerous when current danger is immaterial to a state's registration scheme. In *Smith v. Doe,* 538 U.S. 84, 102–103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the Court held that Alaska's Sex Offender Registration Act was not punitive. Thus, retroactive application of its provisions did not violate the Ex Post Facto Clause.

Those decisions substantially illuminate issues in this action. The court invited counsel to discuss possible settlement in light of the Supreme Court's guidance. The parties, however, were too entrenched to explore full or partial settlement. Thereupon, the court granted plaintiff's motion to reinstate this action and entered a new scheduling order. Pursuant to that order, all parties, except the sheriff of Jefferson County, filed motions for summary judgment addressing all claims.

## V. MOOTNESS

The Texas legislature amended TSORP twice during pendency of this suit. *See supra* Part III. An entirely new provision designates the Texas Department of Public Safety as the entity to determine whether elements of UCMJ offenses are substantially similar to elements of Texas offenses that require registration, and grants a right of judicial review of that determina-

tion. Another amendment provides that anyone required to register under federal law or UCMJ, and not otherwise specifically required to register under TSORP, must register in Texas. These amendments were almost certainly what the Fifth Circuit referenced when concluding that an interlocutory appeal would not advance the ultimate termination of this litigation.

## A. Competing Arguments

Defendants argue that plaintiff's action for prospective injunctive relief is moot because Texas now provides a due process mechanism for determining facts relevant to plaintiff's duty to register. Alternatively, defendants argue that the claim is moot because plaintiff must register in any event under amended Article 62.021. Defendants assert that the United States Secretary of Defense, in compliance with 10 U.S.C. § 951(c), identifies UCMJ offenses that involve conduct compatible with offenses specified in the Wetterling Act, 42 U.S.C. § 14071(a)(3)(A-B) as mandatory for inclusion in state registration programs. Defendants supplied the court with Department of Defense Instruction 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority* at Enclosure 27 (Dec. 17, 1999).[27] Included in that listing is the military offense of indecent acts with a minor, the very offense of which Creekmore was convicted.

Plaintiff responds that Article 62.021 does not moot his claim because there is no federal sex offender registry and no federal duty to register. Plaintiff does not respond specifically to defendant's assertion that Article 62.0101 moots his claim, but counsel has argued in other contexts that TSORP still does not provide a formal

mechanism with due process safeguards for determining frequency and duration of a person's duty to register.

## B. Principles of Analysis

■■■ The judicial power of United States courts extends to cases and controversies. U.S. Const. art. III, § 2. Federal courts do not have subject-matter jurisdiction over an action unless "a case or controversy exists." *See* 15 James Wm. Moore et al., *Moore's Federal Practice* § 101.02 (3d ed.2004). The Constitution limits the "judicial power" of the court to resolution of cases and controversies that are "live" throughout pendency of the litigation. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). When a party loses standing because the facts of the case have changed over time, the case becomes moot, and it cannot be pursued further in court. *Artway v. Attorney General of State of New Jersey,* 81 F.3d 1235, 1246 (3d Cir.1996). Properly-acquired jurisdiction will abate in a moot case when "(1) there is no reasonable expectation that the violation will recur, or (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). A federal court must dismiss an action for lack of jurisdiction when a case or controversy ceases to exist due to mootness. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

## C. Discussion and Application

■■ Newly-enacted Article 62.0101 might have mooted Creekmore's procedur-

---

27. *See* Exh. F to Chief of Police's Brief re: "Standing" and in Support of his Motion to Dismiss. For a current version of this Instruction, see *Registration of Sex Offenders,* 69 Fed.Reg. 42,629 (July 16, 2004) (to be codified at 32 C.F.R. 635).

al due process claim. It saves TSORP from a procedural due process challenge to its constitutionality *as written* with respect to determining whether a UCMJ offense is reportable under Article 62.01(J).[28] The same might be said for amended Article 62.021.[29] However, defendants have not utilized either of these amendments. TDPS has not determined whether plaintiff must register under Article 62.01(J). Plaintiff had no opportunity to appeal to a state district court in Travis County. Similarly, plaintiff has not been required to register in Texas under Article 62.021. Rather, Creekmore must register for the same reasons he was given at the outset. The Jefferson County sheriff, relying on a Federal Bureau of Prisons notice, determined, without any process at all, that the military court convicted Creekmore of a reportable offense under Article 62.01(J), that this offense was sexually violent, and that he was convicted two or more times of such offenses.

Under these circumstances, Creekmore's challenge to TSORP, *as applied,* is not moot.

## VI. PERSONAL ACTION

■ Chief Scofield moves, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, that the court dismiss the complaint against him on the ground that it alleges no wrongful conduct on his part. Rule 12(b)(6) authorizes defenses of failure to state a claim upon which relief can be granted to be asserted by motion. Dismissal is appropriate when there is the "lack of a cognizable legal theory *or the absence of sufficient facts alleged under a cognizable legal theory.*" *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) (italics added). Dismissal is proper when the plaintiff cannot recover on facts alleged. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993).

■■ Essential elements of a cause of action under 42 U.S.C. § 1983 are: "the violation of a right secured by the Constitution and laws of the United States," and an allegation that the "deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[30]

28. Article 62.0101 does not expressly authorize the Texas Department of Public Safety to make other relevant determinations regarding frequency and duration of registration, e.g., whether a reportable UCMJ offense is "sexually violent" (triggering a duty to register annually for life, Tex.Code Crim. Proc. Ann. art. 62.12(a) (Vernon Supp.2004)), and whether a person is "convicted two or more times" for a sexually violent offense (triggering a duty to register every 90 days for life, Tex.Code Crim. Proc. Ann. art. 62.06(a) (Vernon Supp.2004)). If TDPS undertakes such ancillary determinations as inherent, and Texas courts entertain appeals of those determinations, TSORP likely will be constitutional as applied to military offenders

29. Article 62.021, while written awkwardly and imprecisely, may suffice as an alternative basis for requiring Creekmore to register. Plaintiff's brief essentially argues that Article 62.021 is meaningless because there is no federal or military registry of sex offenders.

Courts, however, should give effect to every clause of a statute when possible. *Chickasaw Nation v. United States,* 534 U.S. 84, 93, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (citing *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). A court might well conclude that the Texas legislature intended that Article 62.021 require registration from individuals convicted of offenses listed by the Secretary of Defense. There are other possible interpretations.

Texas could easily clear up any confusion by further amending its statute to clarify that any person convicted by court martial of an offense listed by the Secretary of Defense in compliance with the Wetterling Act and with 10 U.S.C. § 951(c) must register in Texas.

30. If pecuniary damages are sought, a Section 1983 plaintiff must also show that injury or damage resulted from the deprivation. *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 310–311, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

With regard to the second element, personal involvement of the defendant is essential. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), cert. denied, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983) ("[p]ersonal involvement is an essential element of a civil rights cause of action."). A defendant cannot be held liable under section 1983 on a theory of vicarious liability, including *respondeat superior*. *Baskin v. Parker*, 602 F.2d 1205, 1207–08 (5th Cir.1979). Thus, when a plaintiff does not allege personal action by the person sued, a complaint submitted under section 1983 fails to state a claim upon which relief can be granted as to that defendant. *See, e.g., Dwire v. Toth*, 215 F.Supp.2d 1128, 1130 (D.Colo.2002).

Here, Chief Scofield correctly observes that Creekmore alleges no actual or imminent wrongful conduct by Scofield. He does not allege that Scofield, or any member of the municipal police department acting at Scofield's direction, required Creekmore to register, gave public notice of Creekmore's conviction and duty to register, or threatens such action in the future. Creekmore alleges only that Scofield, as chief law enforcement officer for the city, has "certain rights and duties under the Texas Sex Offender Registration Program...." Pl.'s Compl. ¶ 7.

The complaint similarly lacks essential factual allegations regarding Greg Abbott, Attorney General of Texas. Indeed, the parties agree that only defendant Woods compelled Creekmore to register. Similarly, only defendant Davis posted public information about Creekmore on the Internet. Under these circumstances, Creekmore fails to state a claim upon which relief can be granted against defendants Scofield and Abbott. Chief Scofield's motion to dismiss will be granted, and the court also will dismiss Attorney General Abbott *sua sponte*.[31]

## VII. CLAIMS BASED ON PUNITIVE INTENT

In scattergun manner, Creekmore argues that TSORP is an *ex post facto* law,[32] a bill of attainder,[33] and cruel and unusual punishment, all in violation of the respective provisions of the United States and Texas constitutions.[34] An essential element to each of these discrete claims is that the law be punitive. Thus, this section addresses that threshold issue.

### A. Testing For When A Statute Is Punitive.

To determine whether a law imposes punishment, courts apply an "intents-effects" test. *Moore v. Avoyelles Correctional Center*, 253 F.3d 870, 872 (5th Cir.

31. A district court may dismiss *sua sponte* a complaint under Rule 12(b)(6) "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

32. Ex post facto laws, laws seeking to apply retroactive punishment, are forbidden by the Constitution. U.S. Const. art. 1, § 10, cl. 1.

33. Bills of Attainder, legislative acts that single out an individual or group for punishment without a trial, are forbidden by the Constitution. U.S. Const. art. 1, § 10, cl. 1.

34. In this opinion, the court will not discuss Texas constitutional rights separately. Many Texas Constitution provisions have been deemed coextensive with their Federal Constitution counterparts. *See, e.g., Moore v. Port Arthur Indep. Sch. Dist*, 751 F.Supp. 671 (E.D.Tex.1990) (due process); *Busby v. State*, 990 S.W.2d 263 (Tex.Crim.App.1999) (search and seizure); *Washington v. State*, 946 S.W.2d 912 (Tex.App.1997) (double jeopardy); *Garay v. State*, 940 S.W.2d 211 (Tex.App.1997) (equal protection); *Medina v. State*, 828 S.W.2d 268 (Tex.App.1992) (ex post facto clause). Hence, the court assumes that its analysis of federal constitutional rights disposes of synonymous state rights.

2001). This test requires two inquiries: (1) whether the legislature intended the sanction to be punitive; and (2) whether the sanction is so punitive in effect that the statute cannot be legitimately viewed as regulatory or civil in nature. *Id.* (citing *United States v. Ursery,* 518 U.S. 267, 288, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). If legislative *intent* was not punitive, only the "clearest proof" that the *effect* of the statute is punitive will suffice. *Smith v. Doe,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Creekmore concedes that the Texas legislature did not intend TSORP to be punitive. Pl's M.S.J. at 26 (Docket # 85). Therefore Creekmore must present clearest proof that effects of TSORP constitute punishment.

## B. Effects of TSORP

■ The United States Supreme Court identifies seven factors to consider when determining if statutes are punitive in effect. *See Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).[35] Creekmore claims that TSORP is punitive in effect under two of these factors. He argues that (1) registration and notification requirements of TSORP constitute an imposition of an *affirmative restraint or disability,* and (2) TSORP's notification provisions go beyond what is necessary to protect the public, and are therefore *excessive.*

### 1. *Affirmative Restraint or Disability*

### a. *Registration Requirements*

Creekmore must register in person. Creekmore argues that this constitutes an affirmative disability sufficient to render effects of the statute punitive. He relies on a Ninth Circuit case, *Doe v. Otte,* 259 F.3d 979 (9th Cir.2001) (*rev'd on other grounds Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)), wherein the court held that Alaska's sex offender registration statute which, as implemented, required in-person registration, imposed an affirmative disability. *Otte,* 259 F.3d at 987.[36] *Otte* did not consider registration requirements alone, however; other effects, such as requiring an offender's place of employment to be included in registry information, were punitive when "considered as a *whole.*" *Id.* at 989 (emphasis added).

The Ninth Circuit never held that in-person requirements alone create an affirmative disability significant enough to render effects of the statute punitive. More importantly, upon certiorari review, the Supreme Court held that neither Alaska's notification nor its registration provisions created an affirmative disability. *Smith,* 538 U.S. at 101–02, 123 S.Ct. 1140. Even though the provisions required offenders to inform authorities before they moved, changed their physical appearance, or bor-

---

**35.** These factors include:
1. Whether the sanction involves an affirmative disability or restraint,
2. Whether it has historically been regarded as a punishment,
3. Whether it comes into play only on a finding of scienter,
4. Whether its operation will promote the traditional aims of punishment: retribution and deterrence,
5. Whether the behavior to which it applies is already a crime,
6. Whether an alternative purpose to which it may rationally be connected is assignable for it, and

7. Whether it appears excessive in relation to the alternative purpose assigned.
*Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554.

**36.** At oral argument, the State of Alaska conceded that it required offenders to complete their registration in person. *Doe I v. Otte,* 259 F.3d 979, 984 n. 4 (9th Cir.2001). The Supreme Court found, however, that nothing in the statute required in-person registration. *Smith v. Doe,* 538 U.S. 84, 101, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

rowed a car, they were not required to obtain permission to do any of these things. *Id.* at 101, 123 S.Ct. 1140. The Court distinguished these types of registration requirements from the types of affirmative restraints that are usually considered to be punishment. *Id.* at 104, 123 S.Ct. 1140.

The Second Circuit addressed the issue of in-person registration requirements of New York's state sex offender registration statute in *Doe v. Pataki,* 120 F.3d 1263 (2d Cir.1997). This statute, like TSORP, required in-person registration every 90 days. *Id.* at 1284–85. The court acknowledged that this requirement was onerous, but held it was not sufficiently severe to render the otherwise non-punitive statute into a punitive one. *Id.* at 1285. The court reasoned that burdens much more severe than an in-person registration requirement, including deportation, termination of financial support, and loss of livelihood, have been determined by the Supreme Court not to be punitive in effect. *Id.*

An in-person registration requirement alone does not render TSORP punitive. The Supreme Court instructs that a statute's rational connection to a non-punitive purpose is a " 'most significant' " factor when determining that effects are non-punitive. *Smith,* 538 U.S. at 102, 123 S.Ct. 1140 (quoting *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). Texas may require in-person registration for any number of rational, non-punitive purposes. It serves the state's goal of keeping its citizenry safe. The statute specifically provides that the person completing and verifying the registration information must provide proper identification. Tex.Code Crim. Proc Ann. art. 62.02(d), art. 62.06(c) (Vernon Supp.

2004). The state has a non-punitive interest in making sure the correct person is completing the registration. The in-person requirement ensures that the photograph provided by the registrant actually looks like the person. In-person registration ensures that nonpublic information on the registration form stays out of the public view. When a registrant picks up the form in person, there is little to no chance that the form, with its private information, will be mailed to the wrong house, or picked up by the wrong person.

The court concludes, therefore, that TSORP's registration requirements alone are not enough to render the statute punitive in effect. The state has any number of rational, non-punitive reasons for requiring in-person registration. The burden imposed by these requirements, while onerous, is not as severe as other provisions upheld by the Supreme Court.

### b. *Notification provisions.*

Creekmore also argues that community notification provisions impose an affirmative disability. Creekmore does not fully explain why active dissemination of conviction and other information leads to an affirmative restraint or disability, but implies that disability stems from public stigma that attaches to people convicted of sex offenses. This stigma may make it more difficult for Creekmore to obtain employment or housing.

The Texas Court of Criminal Appeals, applying the *Mendoza–Martinez* factors, concluded that TSORP notification provisions are not punitive. *Rodriguez v. State,* 93 S.W.3d 60 (Tex.Crim.App.2002). The court observed that, although offenders may find life difficult because of public stigma, such effects are not relevant. *Id.* at 71. The effects, the court reasoned, stem not from the statute, but from community response.[37] *Id.*

---

**37.** Creekmore claims that *Rodriguez* only applies to TSORP up to the 1997 amendments,

and therefore does not deal with TSORP in its current form, with relevant amendments

In *Smith,* the Supreme Court reached a similar conclusion. The Court reasoned that because information contained in the sex offender registry is public information anyway, and since the public could look up a person's criminal history even absent a sex offender registry, the existence of the registry was not sufficient to render notification provisions punitive. *Smith,* 538 U.S. at 100–01, 123 S.Ct. 1140. Any "lasting and painful" impact on the offender was the result of his conviction, not his registration. *Id.*

TSORP notification requirements provide for distribution of similar information through publication in a local newspaper (Tex.Code Crim. Proc. Ann. art. 62.03(e),(f) (Vernon Supp.2004)), a database on the Internet (*Id.* at art. 62.08), notification sent to neighbors of certain offenders (*Id.* at 62.045), and notification sent to school district superintendents (*Id.* at 62.03(e),(f)). Maintaining a public database on a state website does not constitute a punitive measure. *Smith,* 538 U.S. at 104–105, 123 S.Ct. 1140. Notification to the neighborhood is only sent when an offender has a risk level of '3'; there is no evidence that defendants have ever assigned Creekmore a risk level, nor that any notification was ever sent to Creekmore's neighbors. Therefore, the issue of any punitive effect of this provision is not before the court.

Publication in a newspaper, as well as notification sent to school district superintendents, is rationally related to the non-punitive intent of TSORP. Registries are effective when people have access to the information in the registry. Publication in a newspaper in the local area is tailored to bring the relevant information to those most needing it. Notice to superintendents is provided only when the victim of

the offense is under the age of 17. Tex. Code Crim. Proc. Ann. art. 62.032 (Vernon Supp.2004). This information is provided to school personnel, so that they can keep their students safe. This is also a rational, non-punitive goal of the statute.

### c. Resolution

Creekmore does not present the clearest of evidence that TSORP's registration and notification provisions impose an affirmative restraint or disability that overrides legislative non-punitive intent such that the effect is punitive.

### 2. Excessiveness

Creekmore argues that TSORP's notification provisions are excessive, as applied, because they disseminate false information about him. Certainly, dissemination of *false* information is not necessary to achieve TSORP's non-punitive intent. However, the Supreme Court rejects individual-specific "as-applied" challenges to otherwise civil statutes. *See Seling v. Young,* 531 U.S. 250, 263, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). "As-applied" challenges are unworkable, as the issue of whether the statute was civil or punitive would never be resolved. *Id.* Moreover, this argument begs the question.

TSORP's notification provisions are not excessive in general. States are not required to find a perfect fit between non-punitive goals and measures prescribed in statute. *Smith,* 538 U.S. at 103, 123 S.Ct. 1140. Even if some TSORP registrants present no future danger to the community, the state's non-punitive aim is rationally served by requiring all persons convicted of a certain offenses to be subject to the notification provisions, without individual

---

made in 1999. The Texas Court of Criminal Appeals stated in *Ex parte Robinson* 116 S.W.3d 794 (Tex.Crim.App.2003), however, that there was nothing in the 1999 amend-

ments that would alter its analysis, and that TSORP in its current form remains non-punitive.

determinations of current dangerousness. Once again, Creekmore is unable to present clear evidence that TSORP's notification provisions are excessive in general effect.

## C. Conclusion

Creekmore admits that the Texas legislature intended to create a non-punitive registration statute, and is unable to present clear evidence that effects of TSORP are punitive. Therefore, the court must defer to the Texas legislature, and deem TSORP a civil statute. As TSORP is a civil statute rather than a punitive statute, Creekmore's claims that TSORP is unconstitutional because it is an *ex post facto* law, a bill of attainder, cruel and unusual punishment, and double jeopardy all fail.

## VIII. EQUAL PROTECTION

██ States may not deprive any United States citizen of equal protection under the law. United States Const. amend. XIV. Creekmore claims that defendants violate his right to equal protection by requiring him to register as a sex offender under TSORP. Creekmore reasons that not every Texas sex offense is reportable under TSORP. Persons convicted of non-reportable offenses do not have to register. Creekmore perceives himself as situated similarly to people convicted of non-reportable sex offenses. Yet, he is required to register. Thus, he is treated unequally under the law.

██ To succeed on an equal protection claim, a plaintiff must show that people similarly situated were treated differently. *See Beeler v. Rounsavall,* 328 F.3d 813, 816 (5th Cir.2003); *Bryan v. City of Madison,* 213 F.3d 267, 276 (5th Cir.2000).

Creekmore, who was convicted under the UCMJ, is not similarly situated to individuals convicted under the Texas Penal Code (TPC). These individuals' acts were committed in the state, and they were tried and convicted in state court. Creekmore's actions took place out of state, and so necessarily could not have been prosecuted under the TPC.

Creekmore is similarly situated to individuals convicted of a sex offense in a jurisdiction other than Texas. If other individuals convicted of offenses in another jurisdiction were awarded due process hearings, or not required to register at all, then Creekmore might assert an equal protection claim. Creekmore, however, presents no evidence that individuals convicted of sex offenses outside the jurisdiction of Texas have been treated differently than he.

██ Even were Creekmore similarly situated to offenders convicted under TPC, he does not show himself entitled to relief under the Equal Protection Clause. "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies ... with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Accordingly, a law is "presumed to be valid [for equal protection purposes] and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440, 105 S.Ct. 3249.

Differences in treatment are allowed as long as the state has a rational basis for disparate treatment.[38] There is a rational basis to treat individuals convicted in Tex-

**38.** Laws concerning categories of individuals that have been subject to a "history of purposeful unequal treatment or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities" are evaluated under an elevated standard of scrutiny. *Massachusetts Board*

*of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Elevated scrutiny is appropriate when factors such as race, alienage, national origin, or gender create distinctions under the law. *Cleburne v.*

as differently from individuals convicted in another jurisdiction. The Texas legislature is the government body that determines which activities in Texas are criminal. When offenses are added, removed, or amended to change elements, the legislature itself acts. The Texas legislature can easily keep track of sex offenses in its own jurisdiction. Such is not the case when dealing with sex offenses from fifty-plus other jurisdictions. It would be unreasonable to require the legislature to keep track of changes in law in those jurisdictions.

The legislature rationally created a different set of rules under TSORP governing registration of out-of state, or federal, offenders. Defendants know whether or not individuals convicted in Texas are convicted of a reportable offense, as TSORP lists specific TPC offenses requiring registration. This is not true for individuals convicted in another jurisdiction who move to Texas. Defendants cannot know if Creekmore has been convicted of a reportable offense by merely looking at TSORP.

In sum, Creekmore's Equal Protection claim fails because he has not shown that similarly situated persons were treated more favorably, or that Texas had no rational basis for its action.

## IX. PROCEDURAL DUE PROCESS

■■■ Creekmore complains that he received no advance notice, no opportunity for hearing, and no opportunity to appeal critical determinations affecting his duty to register, duration of his registration, or frequency of registration. He contends that lack of these benefits deprived him of liberty without due process of law.

The Fourteenth Amendment prohibits state governments from depriving a person of liberty without due process of law. United States Const. amend. XIV, § 1. As interpreted by courts, Due Process has both procedural and substantive aspects. The procedural aspect deals with minimum safeguards to ensure basic fairness. *See Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 161, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (stating that procedural due process is one of the "deep-rooted demands of fair play enshrined in the Constitution"). Primary procedural safeguards are notice and opportunity to be heard.

### A. Liberty Interest

To prevail on his procedural due process claim, Creekmore must first show he has been deprived of a protected liberty interest. *American Mfr. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In an earlier opinion focusing solely on alleged stigmatizing conduct by state actors, the court concluded that Creekmore did not allege facts implicating a life, liberty, or property interest protected by the Constitution. *See Creekmore II,* 138 F.Supp.2d at 799. The court now reaffirms its earlier decision on that narrow point.

On remand, however, Creekmore broadens his attack. He takes the position that defendants' actions deprive him of liberty apart from damage to reputation through stigmatizing conduct. Creekmore now argues—correctly—that procedural guarantees of the Due Process Clause may be invoked whenever, as a result of state action, a right or status previously recognized is distinctly altered or extinguished.

---

*Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Several courts have held that sex offenders are not in a protected class. *See U.S. v.*

*LeMay,* 260 F.3d 1018, (9th Cir.2001); *Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir.1992).

*See Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

By requiring Creekmore to register, defendants distinctly altered his status. Creekmore is required, under law, to do things that other citizens are not required to do. Registration requirements under TSORP are numerous and cumbersome. Persons required to register must register in every municipality or county where they intend to reside for more than seven days, provide identification information, including shoe size and social security number, and provide a recent photo and set of fingerprints. Tex.Code Crim. Proc. Ann. art. 62.02(a)-(b) (Vernon Supp.2004). Registering persons also must report in person to the local law enforcement agency to ensure that the agency's information is correct. *Id.* at (d). Registering persons must report, in person, to their current registration authority seven days before they move, and report, in person, to the new registering authority within seven days after they move. *Id.* at art. 62.04(a) (Vernon Supp.2004). Persons required to verify their registration information every 90 days are given a registration form only after showing proof of identity. *Id.* at art. 62.06. This provision necessitates that they travel to their registering authority and verify the information in person every 90 days.

Registration also imposes a set of legal duties on Creekmore. If Creekmore disregards these duties, he is subject to felony prosecution. *Id.* at art. 62.10. This constitutes a change in Creekmore's status under the law. *See Doe v. Department of Public Safety,* 271 F.3d 38, 57–58 (2d Cir. 2001) (*rev'd on other grounds,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003)). These requirements and legal duties are sufficient in and of themselves to implicate a liberty interest. *See Gwinn v. Awmiller,* 354 F.3d 1211, 1222–1223 (10th Cir.2004) (citing *United States v. Bartsma,* 198 F.3d

1191, 1199–1200 (10th Cir.1999)). *See also Doe v. Pryor,* 61 F.Supp 2d 1224, 1232 (M.D.Ala.1999) (noting that Alabama's statute deprived a person of many rights).

*Pryor,* cited in the last paragraph, illustrates how registration statutes change a person's legal status and deprive that person of rights previously enjoyed under state law. The plaintiff was convicted under federal law for receiving child pornography in interstate commerce. *Id.* at 1225. Alabama's sex offender registration statute provided that if a person committed a crime in any jurisdiction that would constitute a crime in Alabama requiring registration, then that person must register as a sex offender in Alabama. *Id.* at 1226. The statute, however, did not specify procedures for making this determination, and there was no appeals process. *Id.* The court decided that a preliminary injunction was appropriate, reasoning that plaintiff was likely to succeed on the merits at trial, as Alabama's program infringed on a number of liberty interests; the state provided no process before subjecting Doe to its requirements; and there was substantial risk that errors would occur. *Id.* at 1233–1234.

For people convicted within Texas of an offense reportable under TSORP, procedural due process requirements are met through their original trials that resulted in convictions. *Connecticut Dep't of Public Safety v. Doe,* 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Thus, in *Doe,* the Court held that Connecticut did not have to provide any additional process. The fact that plaintiffs sought to establish (that they were not presently dangerous) was not a fact material to the registration statute. *Id.* However, by clearest of implication, due process safeguards apply when there are contested facts relevant to the statutory scheme. *Id.* at 8, 123 S.Ct. 1160.

Creekmore has a colorable claim that his military offenses did not have elements

substantially similar to Texas offenses requiring registration. *Creekmore I,* 116 F.Supp.2d at 775. That claim clearly is not only relevant but essential to the statutory scheme: specifically, his duty to register. Thus, he was entitled to due process when state officers determined whether his UCMJ offenses are substantially similar in their essential elements to listed Texas offenses.

## B. Sufficiency of Process

Defendants provided no process whatsoever before requiring plaintiff to register or posting his personal information on the Internet. *See Creekmore II,* 138 F.Supp.2d at 803. Thus, Creekmore's liberty interest was infringed without due process of law.

The post-deprivation state court hearing on his *pro se* application for a restraining order did not suffice because it did not proceed to final adjudication, and did not, in any event, satisfy due process requirements. To satisfy procedural due process requirements via a post-deprivation hearing, the delay must be necessary: "[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Generally, a hearing prior to deprivation is necessary unless time-sensitive issues call for immediate action. Time sensitive issues were not at stake in this case.

## C. What Process is Due

States need not enact identical procedures for every possible deprivation of right or interest. The unique circumstances of each situation call for flexibility in the due process requirements. *See Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Courts look to three factors when determining the level of process due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893; *see also City of Los Angeles v. David,* 538 U.S. 715, 716, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003).

The private interest in Creekmore's case is large. Clearly, individuals have a strong interest in not having onerous legal duties imposed upon them without due process. Second, determining whether elements of one offense are substantially similar to elements of another offense is a difficult task. *Creekmore II,* 138 F.Supp.2d at 803–804. Therefore, the risk of error under the procedures used by defendants in Creekmore's case (decision by untrained layman) is high.[39] Finally, the interest of the government in keeping procedures the same is low. The government has a

---

**39.** The potential for error is amply demonstrated in reported cases. In *Gwinn,* cited earlier, the plaintiff was convicted of burglary but categorized incorrectly as a sex offender while in prison. Upon release, he was required to register as a sex offender. *Gwinn,* 354 F.3d at 1214–15. Gwinn had no opportunity to contest that requirement. The Tenth Circuit held that once released, Gwinn could

not be required to register as a sex offender without due process. *Id.* at 1221, 1223.

More recently, and closer to home, two Texas cases reflect similar errors and reach similar results. In both *Williams v. Ballard,* 2004 WL 1499457 (N.D.Tex.2004), and *Branch v. Collier,* 2004 WL 942194 (N.D.Tex. 2004), persons were convicted of offenses that did not require registration under TSORP. In

strong interest in keeping its citizenry safe, but there are procedures it can follow to achieve those goals. Additional administrative burdens are likely to be low, as relatively few individuals are affected by this TSORP provision.

■■■ TSORP, as amended, is not facially unconstitutional. It charges a specific agency with responsibility to determine if elements of a UCMJ offense are substantially similar to the elements of a Texas offense. Although the statute does not specify a procedure that TDPS must follow, it is reasonable to believe that the legislature intended that TDPS will follow the same procedures it uses when making other determinations. TDPS has official procedures for "determination of all contested cases arising under the department's jurisdiction."[40] 37 Tex. Admin. Code § 29.2 (2004). TSORP also provides a means of appeal if an individual is not satisfied with TDPS's determination. If unsatisfied, an individual can bring suit in a district court in Travis County. Tex. Code Crim Proc. Ann. art. 62.0101(b) (Vernon Supp.2004).

The current statute generally provides due process, but officials acting under authority of state law have failed to give the process provided by statute to Creekmore individually. The defendants can easily remedy this violation by following their own guidelines.

## X. SUBSTANTIVE DUE PROCESS; SEARCH AND SEIZURE; RIGHT TO TRAVEL

A citizen's right to due process of law arises from the Fifth and Fourteenth Amendments.[41] The right to freedom from unreasonable searches and seizures arises from the Fourth Amendment.[42] The personal right of travel arises from judicial interpretation of three constitutional provisions: the Privileges and Immunities clauses of Article IV and the Fourteenth Amendment, as well as the Commerce Clause.[43] Registering as a sex

---

*Williams,* the plaintiff was erroneously identified as a sex offender on the TDPS website. In *Branch,* the Texas Department of Criminal Justice wrongfully decided to impose sex offender parole conditions on Plaintiff, which included registering as a sex offender. In both instances, the court determined that plaintiffs had protected liberty interests entitling them to due process, and that due process was not afforded by the absence of any notice or opportunity to be heard in the matter.

**40.** A contested case is defined as "a proceeding … in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Tex. Gov't Code Ann. § 2001.003(3) (Vernon Supp.2004).

**41.** U.S. Const. amend. V provides that "no person shall … be deprived of life, liberty, or property, without due process of law". U.S. Const. amend. XIV applies this provision to the states: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

**42.** U.S. Const. amend. IV provides as follows: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**43.** U.S. Const. art. IV, § 2, provides that "the citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Likewise, U.S. Const. amend. 14, § 1, provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Finally, U.S. Const. art. I, § 8, cl. 3 provides that Congress has the authority to "regulate Commerce … among the several States." In finding that citizens have a constitutional right to travel, courts refer to a combination of these three provisions, but recognize that the exact textual source of the right remains elusive. *Attorney Gen. of New York v. Soto–*

offender can implicate each of these rights. *See, e.g., Connecticut Dep't of Public Safety v. Doe,* 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (due process); *Rowe v. Burton,* 884 F.Supp. 1372, 1381 (D.Alaska 1994) (Fourth Amendment search and seizure); *Cutshall v. Sundquist,* 193 F.3d 466, 478 (6th Cir.1999) (right to travel).

 Generally, substantive due process protects against arbitrary exercise of governmental powers, unrestrained by established principles of private rights. *See County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). When no fundamental liberty interest is involved, however, the state must only show a rational basis for its actions to survive either a substantive due process challenge or a claim of denial of the right to travel. *See Doe v. City of Lafayette,* 377 F.3d 757, 2004 WL 1698309 (7th Cir. 2004) (due process); *Wright v. City of Jackson,* 506 F.2d 900 (5th Cir.1975) (travel). Similarly, a state may survive a claim of unreasonable search and seizure by showing that the challenged intrusion is minor while serving a significant societal interest. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

The parties' competing arguments on these three issues are bootstrapping and thus rhetorical. Each side takes it as given that Creekmore either is or is not lawfully subject to registration under TSORP. Creekmore sees his compelled registration as wrongful and thus *ipso facto* violative of constitutional guarantees, while defendants see Creekmore's duty to register as self-evident, and argue that each challenged action by the state is *ipso facto* justified.

Both sides are wrong when the circumstance advocated by the opposing party is presupposed. For example, defendants argue that Creekmore can assert no sub-stantive due process claim, because the liberty interests he claims are being infringed upon are either slight, or already burdened in daily life. If defendants are correct, nothing keeps the state from requiring everyone to register. The logical implication of defendants' argument is that Texas could require anyone at all to register, regardless of criminal history. This cannot be correct. The state cannot compel a person to register as a sex offender unless that person meets the requirements set out in the statute. There is no rational reason to require a non-offender to register. Assuming, *arguendo,* that Creekmore is correct, and he is not properly subject to TSORP, enforcing TSORP's registration provisions against him would violate his substantive due process rights.

 Conversely, when a person is subject to registration under the statute, Texas has a rational basis for restrictions it imposes. The State of Texas has an interest in keeping its citizens safe. The State may reasonably conclude (as all states have) that it can help keep its citizenry safe by making sex offenders register and provide to local authorities information such as their residence, description, and fingerprints. States are allowed to maintain sex offender registries because they serve a compelling state interest: the interest the state has in keeping citizenry safe. The state can rationally make the determination that sex offenders are more likely than other offenders to repeat their crimes, and so more likely to be a danger to those around them. The state classifies its citizens based on convictions and requires registration only because a person was convicted of a named offense.

 The analysis holds when considering one's right to travel. The state can show no rational basis for restricting intra-

state travel of non-offenders. However, the state has a rational basis for requiring people properly subject to TSORP to notify law enforcement in areas where they regularly travel or visit. The citizens of these areas are entitled to as much protection and warning about sex offenders regularly in their midst as citizens living permanently near these offenders. The state may rationally conclude that sex offenders pose as much a danger while traveling as they do at home. While these registration requirements may be inconvenient for Creekmore, they do not rise to a violation of his right to travel, provided, however, that he meets prerequisite requirements set out in the statute for registration.

 Lastly, Creekmore will be seized unreasonably by virtue of having to surrender for in-person registration if he is not subject to the in-person registration requirements of TSORP. But if he is subject to those provisions, Texas has rational, nonpunitive reasons for requiring in-person registration. Among other things, it ensures that the information on file is accurate and up-to-date. *See supra* Part VII.B.1. Moreover, courts generally hold that while the imposition of such sex offender registration requirements may constitute searches or seizures, they are not unreasonable. *Roe v. Marcotte*, 193 F.3d 72, 78–79 (2d Cir.1999); *Russell v. Gregoire*, 124 F.3d 1079, 1093 (9th Cir.1997); *Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir.1996).

In *Rowe v. Burton*, 884 F.Supp. 1372, 1381–83 (D.Alaska 1994), the court applied a balancing test set forth in *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), to determine reasonableness of the seizure, and stated that courts "must balance the state's interest and the effectiveness of the intrusion against the intrusion upon an individual's privacy." The *Rowe* court concluded that society has a valid and significant interest in preventing further sex offenses, and that the intrusion on the offender's privacy was minimal, because the program did not grant police any discretion to detain or question the offender during the in-person registration. *Rowe v. Burton*, 884 F.Supp. at 1383. The government clearly has an important interest in gaining registration information from sex offenders, and requiring a warrant for each scheduled update would simply be impractical.

As demonstrated by the preceding illustrations, whether Creekmore's constitutional rights are violated is an issue that turns on how a threshold question is answered: Must Creekmore register under TSORP? At this point, the ultimate answer to that question is unknown. Thus, these ancillary issues need not be decided now.

## XI. CONCLUSION

*The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result. And so great is our commitment to the process that, except in the rare case, we do not pause to express distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases.*

— Anthony Kennedy, *Texas v. Johnson*, 491 U.S. 397, 420, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)(concurring).

The judicial landscape is strewn with many previous cases attacking various state sex offender registration statutes on grounds similar to those advanced by Creekmore here. Predictably from those prior cases, Creekmore's brazen, scattergun challenges to TSORP, motivated primarily by ideological disagreement with

the law itself, fail. Nonetheless, his sharply-focused motion for summary judgment based on deprivation of procedural due process has merit. Granting that motion will entitle him to prospective relief.

This result surely must irk defendants because contours of TSORP, particularly Article 62.01(5)(J) pertaining to Uniform Code of Military Justice offenders, are the product of *federal* fiat. Texas officials acted here only in accordance with notice from the *Federal* Bureau of Prisons that Creekmore was subject to registration *under federal law.* Yet, the court now enjoins *Texas* officials from including Creekmore in the program—a seemingly-bizarre, good-guys-lose result.

Moreover, the result is generally disquieting because no ·one can seriously doubt that when Creekmore engaged in the criminal conduct described earlier, he was the very kind of public menace that energized Congress to enact legislation pressuring individual states to enact programs such as TSORP. Angst lingers notwithstanding that formal due process analysis compels a ruling favorable to Creekmore.

But this result becomes more palatable, and intrinsic justice becomes more apparent, when one considers that the same issues could arise under a less sordid scenario. An eighteen-year-old Texas soldier on leave following stressful boot camp, or back from dangerous overseas deployment, might have the same "urges" as Creekmore. He might engage in exactly the same conduct, not with an innocent, defenseless two-year-old daughter, but with a physically mature, fully-consenting, and flirtatious fifteen-year-old female. That young soldier, who may have been unsuspecting of his partner's true age, might nevertheless be convicted of the UCMJ offenses involved here. Following military service, the young soldier might be instructed ·to register under TSORP, perhaps for life, perhaps every 90 days.

Would not most Texans advocate that any decision with such grave consequences be made carefully, not casually by untrained laymen, and with opportunity for hearing and review? This question is not rhetorical, nor is the answer uncertain. Texas provides these very safeguards to its young citizens convicted under Texas law. It gives Texas judges discretion to waive registration altogether when young offenders engaged in consensual sex. *See* Tex.Code Crim Proc. Ann. art. 62.0105 (Vernon Supp.2004); *Aguirre v. State,* 127 S.W.3d 883, 887 (Tex.App.2004) (stating that "the legislature intended to . . . [give] . . . judges the discretionary authority to exempt certain young offenders" from registration; and citing House Comm. on Pub. Safety, Bill Analysis, Tex. H.B. 2987, 77th Leg., R.S. (2001)).

Analytically, there is no distinction between this supposed soldier's scenario and Creekmore's case. Certainly, moral equities are different, causing one to regard Creekmore with natural contempt, but the young soldier with instinctive compassion. Justice, however, is blind, and cannot be governed by bias, prejudice, or sympathy. When one considers that the plaintiff in this case might have been the soldier, the genius and wisdom of the constitution's Framers, who guaranteed to all citizens—even contemptible, obnoxious ones—the right to due process of law, is readily discerned, and treasured in most hearts.

Creekmore's rights and status were altered and extinguished without benefit of due process safeguards. The absence thereof· entitles him to injunctive relief, which the court will incorporate into a final judgment. The injunction, however, will be narrow. It will not preclude law enforcement officials from subjecting Creekmore to registration under Article

62.01(5)(J) upon providing the process now afforded under Article 62.0101.[44] It will not preclude state officials from requiring Creekmore to register under any other alternative provision of TSORP, including Article 62.021, which may apply in their considered judgment.

The court's decision here simply declares that procedures initially used by officials acting under color of state law in January, 2000, did not satisfy constitutional requirements, and the court's injunction simply prevents defendants from continuing to subject Creekmore to registration and public dissemination of information under those inadequate procedures. By separate order, the court will partially grant and partially deny the competing motions for summary judgment. In addition, the court will enter a separate judgment and injunction in accordance with the findings and conclusions above.

Whether this case constitutes the final chapter will depend, in large part, on whether in the future defendants act in accordance with the Supreme Court's admonition that when a fact is relevant to the statutory registration scheme, basic procedural safeguards of notice, opportunity to be heard, and appellate review, are required.

---

**44.** Creekmore does not argue, nor does the court infer, that state officials must rehear evidence regarding his actual conduct. He simply requests a competent decision from an officially-designated person or entity, notice, and an opportunity to be heard before his fate is determined. Individualized evidentiary hearings probably are unnecessary to enable TDPS to determine which UCMJ offenses have elements substantially similar to Texas offenses. Such determinations might be made on an individual, case-by-case basis, or globally, through administrative rule-making. In either instance, an aggrieved person's ability to secure judicial review of the administrative ruling appears to satisfy due process concerns.