JOHN S. JONES v. T. H. McMAHAN & GILBERT.

The constitution of 1866, article IV, section 6, provides, that the district courts and the judges thereof shall have power to issue writs of injunction, *certiorari*, and all other writs necessary to enforce their own jurisdiction. (Paschal's Dig., p. 935, sec. 6 ) The power resides in the judges as well as the court.

The 4th section of the act of 11th May, 1846, to organize the district courts, &c., reads as follows: " The judges of the district courts, and each of them, either in vacation or term time, shall have authority to grant, on petition

to them therefor, writs of *habeas corpus*, *mandamus*, injunction, sequestration, error, and *supersedeas*, and all other remedial writs known to the law, returnable according to law: *Provided*, That no *mandamus* shall be granted on an *ex parte* hearing, and any peremptory *mandamus* granted without notice shall be deemed void: *And further provided*, That all writs of *mandamus*, sued out against the heads of any of the departments or bureaus of government, shall be returnable before the district court of the county in which the seat of the government may be." (Paschal's Dig., Art. 1407, Note 528.) This section, like the constitution, gives the power to the judge as well as to the court.

Whatever ordinary or extraordinary writ can be issued by a common-law judge or chancellor in those states where the jurisdiction of the officers is separate and distinct, in this state can be issued by the judge.

There is no limitation as to the court to which the judge may order the writ returned, except as to the writs against the heads of departments, which are returnable at the seat of government.

The stay law of 1866, which allowed the defendants in executions to pay judgments by installments, (see the law in the statement,) impairs the obligation of contracts, and is void. (Paschal's Dig., Notes 56, 61, 147, 168; Paschal's Annot. Const., Notes 152 to 157, pp. 153 to 158.)

When Texas was annexed to the United States, it not only adopted the constitution of the United States, but the interpretations of the Supreme Court of that government in reference to laws impairing the obligations of contracts. And as our decisions against the constitution may be brought into review before that court, it is our duty to follow the decisions of that high tribunal.

APPEAL from Galveston. The case was tried before Hon. JOHN R. KINNARD, one of the district judges.

McMahan & Gilbert, having recovered certain judgments and decrees for the foreclosure of mortgages, applied to the clerk of the district court of Galveston county to issue orders of sale. The clerk refused, because of the stay law, which, not being in any digest, is here printed:

"AN ACT regulating the collection of debts.

"1. On all judgments rendered prior to the first day of January, 1867, the judgment debtor shall have twelve months thereafter within which to pay to the plaintiff, his agent or attorney, one-fourth part of said judgment and all costs; and that no. execution shall issue thereon until the

expiration of the time aforesaid, except in like cases and under like circumstances, authorizing the issuance of attachments, in which case execution may issue for the entire amount of said judgment. If within the time aforesaid the said debtor shall pay or cause to be paid the said one-fourth part of said judgment and all costs, then the said debtor shall have twenty-four months from the said first day of January, 1867, within which to pay one-third part of the remainder of said judgment, and that execution shall not issue thereon until the expiration of the time aforesaid, except in like cases and under like circumstances, authorizing the issuance of attachments. If within the time aforesaid the said debtor shall pay or cause to be paid the two installments above specified, then execution shall not issue on such judgment until thirty-six months from the said first day of January, 1867; and that if the said debtor shall pay or cause to be paid, within the time aforesaid, one-half of the remainder due on such judgment, then execution shall not issue thereon until forty-eight months from the said first day of January, 1867, except in like cases and under like circumstances, as above specified: *Provided*, That if payment shall not be made within the time above specified, and in default of said debtor to make payment of any one of said installments, then execution shall issue for the amount of the installment due, as aforesaid, and all costs; *Provided further*, That the provisions of this act in relation to the issuance of attachments shall not be so construed as to subject the produce of the debtor's farm to attachment, on being removed to market; *And provided further*, That the provisions of this section shall not apply to judgments rendered foreclosing mortgages or liens upon real or personal estate.

"2. On all judgments rendered after the first day of January, A. D. 1867, except such as are hereinafter mentioned, the judgment debtor shall have twelve months from the date of such judgment within which to pay one-third part

xxx—46

thereof, and that no execution shall issue thereon until the expiration of the time aforesaid, except in like cases and under like circumstances, authorizing the issuance of attachments; and except, also, in cases of attachment, sequestration, or injunction, where property or effects may be in the hands of an officer under process, or restrained in the hands of another, by virtue of process duly issued, or by agreement of parties interested therein, in which case execution may issue for the entire amount of said judgment or order of sale of such property. If within the time aforesaid the said debtor shall pay or cause to be paid the said one-third part of such judgment, then the said debtor shall have twenty-four months from the rendition of such judgment within which to pay one-half of the remainder due thereon, during which time execution shall not issue, except in cases as above provided. If within the time aforesaid the said debtor shall pay or cause to be paid the two installments, as above specified, then the debtor shall have thirty-six months from the rendition of such judgment within which to pay the entire balance due thereon; and in default of the said debtor to make any one of the payments within the time specified therefor, then execution shall issue for the amount of the installment then due; *And further provided*, That on all judgments hereafter rendered, execution may issue in favor of the officers of court for all costs due thereon; *And provided further*, That the provisions of this act shall not be so construed as to prohibit sales of real or personal estate, in the settlement of estates of deceased persons, in payment of any mortgage or lien; *Provided*, The county judge shall not confirm any sale, unless the property sold shall have brought at least three-fourths of its actual value.

"3. On all judgments heretofore or hereafter rendered, foreclosing a mortgage or lien upon real or personal estate, the judgment debtor shall have two years from the first day of January, 1867; on all judgments rendered prior to

that time, and on all judgments thereafter rendered, two years from the rendition of such judgment within which to pay two-thirds of such judgment; and if payment thereof be made within the time aforesaid, then execution or order of sale shall not issue until twelve months thereafter; and in case of default to make payment of the said two-thirds of such judgment within the time above specified for the first installments, then execution and order of sale shall issue for the entire amount of such judgment, interest and costs due thereon, and sale shall be made, and the proceeds thereof applied to the payment of such judgment liens or mortgages, in the manner now provided by law.

"4. In all suits now pending or hereafter instituted upon accounts, bonds, bills, promissory notes, contract, or other obligation in writing, for the payment of money, made, executed, or entered into before the twenty-sixth day of May, 1865, or in the settlement, substitution, liquidation, or discharge of any such accounts, contract or obligation, made or bearing date since the said twenty-sixth day of May, 1865, it shall be competent to prove by parol testimony, in all suits, that the same were given or entered into in the settlement, substitution, or liquidation of an account made or contract entered into prior to that time; and also the debtor shall, in all cases, be permitted to prove, by parol testimony, that the same were, by the agreement or understanding of the parties, to be paid in confederate currency, and the value thereof at the time the same became due and payable.

"5. Nothing herein shall prohibit the issuance of attachments as heretofore provided by law; and all causes of action which have accrued since the twenty-sixth day of May, 1865, and which are not in discharge of causes of action existing prior to that date, shall be subjected to and regulated by the laws in force prior to the second day of March, 1861.

"6. It shall not be lawful for any trustee to sell, or cause

to be sold, (except with the consent of the parties interested,) any property or real estate. held in trust to secure the payment of the debt or debts therein specified, within two years from the first day of January, 1867. And if the debtor therein shall pay, or cause to be paid, two-thirds of the entire debt or debts secured thereby, within the time aforesaid, then it shall not be lawful for any trustee to sell such trust property until the expiration of twelve months from the time aforesaid; and that if the said debtor shall make default, and fail to make such payment within the two years from the said first day of January, 1867, then it shall be lawful for said trustee to sell the entire trust property, or sufficient thereof to pay the entire debt or debts, interest and costs, in conformity with the directions and provisions specified in such trust deed.

"7. All railroad companies that are owing interest upon their bonds for loan of the common school fund, shall have an extension of time for the payment of the interest now due, as follows: The entire amount of interest now due shall be divided into eight equal parts, and paid as follows, in specie: One equal eighth part, due by each company, shall be paid on or before the first day of January next; and one equal eighth part every six months thereafter, until the entire amount shall have been paid; *Provided*, That on failure of any company to pay any one of such installments, as above stipulated, such company shall forfeit the benefits of this act, and the entire amount of interest then due shall. be collected as now provided by law.

"8. The provisions of the 1st, 2d, and 3d sections of this act shall not apply to, and there shall be no stay of execution upon, suits in behalf of the state of Texas on official bonds, forfeitures, or fines, or to judgments for taxes due the state, or any county, or to suits or judgments for money or property held on deposit or in trust, nor to suits by wards against guardians, nor to suits against ad-

ministrators, nor to suits for damages done to the property or person of another.    Took effect November 10, 1866.''

After the refusal, the plaintiff applied to the judge of the district court for a *mandamus* to compel the clerk to issue the executions.    The judge issued a rule to show cause, returnable to the district court of Harris county.    Jones, the clerk, pleaded to the jurisdiction of that county..    The objection was overruled, and, upon hearing, the court issued the peremptory *mandamus,* and from that judgment the clerk appealed.    (For dates see appellant's brief.)    So that the questions were, first, the right of the court to compel the clerk of Galveston county to show cause in Harris county;    second, the constitutionality of the stay law.

*J. W. Henderson* and *A. P. Thompson,* for appellant.—— I. The appellant is not obliged to prosecute his appeal at the present term of the court, because forty days did not expire between the perfecting of the appeal and the first day of the term of this court next succeeding the perfecting of the appeal; nor did the forty days expire before the first day of the time in this term upon which causes from the 7th district were designated for trial.    (Paschal's Dig., Arts. 1586, 1587; O. & W. Dig., Art. 1923.)

The appeal was perfected by the filing of the appeal bond, 7th January, 1867.    This term of the Supreme Court commenced on the 14th January, 1867, and the 4th day of February, 1867, was the day of the term designated for the trial of causes from the 7th district, the district from which the appeal was taken.

.Article 1928 of O. & W's Digest, gives the appellant a substantive right to the full time permitted by the statute for preparation to prosecute his appeal advisedly and to effect.

There is also a preliminary question of jurisdiction in the court below.

II. So far as this appeal requires a reference to the pleadings, they are these: The appellees, being judgment creditors, with orders of sale in two suits decided in the district court of Galveston, upon the refusal of the appellee, clerk of the court, to issue orders of sale, applied to the judge in chambers at Grimes county for a rule *nisi* for a *mandamus* to compel the issue of such orders of sale, which rule was granted on the 10th November, 1866, requiring the appellant to appear before the judge at the court in Harris county, on the 29th November, 1866. Appellant then pleaded to the jurisdiction, that he was not bound to answer such a rule in chambers, nor elsewhere than in his own court at Galveston, and that in term time. This plea was overruled, and this ruling forms the first assignment of error.

If the clerk can be required to go before the judge of his own district in chambers in any other county, in like manner he could be compelled to go before the judge of any other district who should issue the rule for a *mandamus*, and might be carried to any distant corner of the state, because any judge could have issued the writ. (Paschal's Dig., Art. 1407; Kitchen v. Crawford, 13 Tex., 522.) True, by the statute (Paschal's Dig., Art. 1407) the judge in vacation can issue such a writ, but it should be returnable before the court. Thus in England it was the court of king's bench alone that could issue the writ of *mandamus*. (*Vide* Bacon's Abr., tit. MANDAMUS, vol. 6, p. 418, *et seq.*)

The writ of *mandamus* in England was always returnable and tried in term. (See all the English cases. From Bagg's case, 11 Co. Rep., 94, down to the last report, and the cases in our own Texas Reports were all decided below by the court in term time.)

III. If the clerk of the court refuse to issue execution on a moneyed judgment, the plaintiff has a perfect remedy on the clerk's bond, and therefore cannot have a *mandamus*. (Godwin v. Glazer, 10 Cal., 333.) It will not lie where the party

has any other legal remedy.   (Frémont v. Cripen, 10 Cal., 211.)

It does not lie to compel a public officer to do an act not clearly commanded by law.   (Pucket v. White, 22 Tex., 559; The State v. County Judge, 7 Clarke, (Iowa,) 425; Commonwealth v. Pittsburg, 34 Penn. State, 496.)

A writ of *mandamus* does not lie in virtue of any prerogative power, and, in modern practice, is nothing more than an ordinary action at law in cases where it is the appropriate remedy.   (TANEY, Chief Justice, in Kennedy v. Denison, 24 How., 66.)

[The *Reporter* has been obliged to omit much of the brief, which was altogether on the question of practice.]

No brief for the appellees has been furnished to the *Reporter*.

MORRILL, C. J.—There are two questions raised for our decision in this case:

First. Whether a district judge can issue a writ of mandamus to a clerk of a district court in his judicial district, requiring the clerk to appear before him in a court of a county in which the clerk does not reside, but in the judicial district, and show cause why he does not discharge what the judge considers the clerk's official duties.

Second. Whether the act of the legislature, chapter 125, approved 10th November, 1866, commonly called the stay law, is constitutional.

The constitution, article IV, section 6, provides that the "district courts and the judges thereof shall have power to issue writs of injunction, *certiorari*, and all other writs necessary to enforce their own jurisdiction."

The act of 11th May, 1846, (Paschal's Dig., Art. 1407,) also provides, that "the judges of the district courts, and each of them, either in vacation or term time, shall have authority to grant, on petition to them therefor, writs of

*habeas corpus,* mandamus, injunction, sequestration, error, and *supersedeas,* and all other remedial writs known to the law, returnable according to law: *Provided,* That no mandamus shall be granted on an *ex parte* hearing, and any peremptory mandamus granted without notice, shall be deemed void: *And further provided,* That all writs of mandamus, sued out against the heads of any of the departments, or bureaus of government, shall be returnable before the district court of the county in which the seat of government may be."

It will be perceived that the constitution refers to and recognizes the facts, that the district judge, in issuing the extraordinary writs mentioned, can exercise this power as a court or as judge. The legislature refers to the same fact, and inculcates the same idea, in the statement that the judges, and each of them, either in vacation or term time, shall have the authority, &c. Paschal's Digest, article 1405, being the second section of the district court act, after specifying the powers generally of the district judges, closes by giving them jurisdiction in all suits "whatever, without regard to any distinction between law and equity, * * * and generally to do and perform all other acts pertaining to courts of general jurisdiction."

It is therefore evident, that whatever ordinary or extraordinary writ can be issued by a common-law judge or chancellor in those states where the jurisdiction of these officers is separate and distinct, can in this state be issued by a district judge. The power to issue the writs cannot be questioned, and from the fact that the act is express in providing that " all writs of mandamus sued out against the heads of any of the departments or bureaus of government shall be returnable before the district court of the county in which the seat of government may be," and that there is no other requirement as to the place of return of these writs as regards other parties than those named, the legal inference is, that it is discretionary with the judge when

and where they shall be returnable. It is judicially known to us that there are certain weeks and months in the year in which the judges are required to hold their courts in the respective counties of their districts, and we also judicially know, that at the time this writ was returnable, the judge was holding the district court in the county of Harris; and hence the consequence must necessarily follow, that the judge would be compelled to neglect the duty of holding his court, or the clerk should be required to appear before the judge in Harris county in person or by attorney, or the writ could not be issued, since it could not be granted on an *ex parte* hearing or without notice. In Meyer v. Carolan, (9 Tex., 250,) the chief justice of this court issued an alternative mandamus to the clerk of the district court of Bexar county, requiring him to perform certain duties or appear before the court at Austin, in Travis county, at a time specified. The return of the writ did not raise the question as to the power of the judge to issue it, requiring the clerk to answer the same in a county different from that of his residence or place of business. The court said: "It has been, by a series of decisions in the Supreme Court of the United States, decided that a mandamus will issue to an officer of the government when the duty to be performed is ministerial in its character." No question was raised as to the power of the judge to issue the writ requiring the clerk to appear at a place out of his county.

This case may, therefore, be regarded as a precedent; and hence the question first proposed, as to the power of a district judge to issue a writ of *mandamus*, requiring a district court clerk to appear before him whenever he may be in the district at a named place, and show cause why he does not do a certain ministerial duty, is to be answered affirmatively. It is also insisted in this case that the party defendant in the suit, against whom execution is sought, should also have been cited. This objection must be based upon the supposition that the records of the clerk's office

do not show when an execution should issue. If the judgment had been discharged, in whole or in part, the proper place for the evidence of this fact would be where the records of the judgment are. And whether the reason for not performing this ministerial duty be payment, or anything else, it could be as well stated by the clerk as the party defendant. He had been once cited to show cause why a judgment should not be rendered and execution issue, and the cause had been decided. It is the duty of the clerk to issue final process of the court, or show cause why he did not.

It is also assumed, that as a *mandamus* is an extraordinary writ, it should not be used when an ordinary writ or suit will be as effectual, and that the relator could have a suit against the clerk on his official bond for neglect of duty. We have no doubt of the general rule thus stated; but from the fact that the most that the relator could recover on the official bond of the clerk would be $5,000, it is not obvious how a judgment against a clerk for this sum would be equal to the collection of a judgment of ten times this amount, especially if, after the judgment should be obtained, no execution could issue thereon. We consider that the writ was legal and proper.

We now leave this preliminary question, and proceed to the main point at issue.

The relators in 1866 obtained a judgment before the district court of Galveston county, based upon notes executed in 1860, and a note, with mortgage to secure the payment of the same, executed in 1862. On the 10th November, 1866, the legislature passed an act entitled, "An act regulating the collection of debts," the 1st section of which provides, that "on all judgments rendered prior to the 1st day of January, 1867, the judgment debtor shall have twelve months thereafter within which to pay to the plaintiff, his agent or attorney, one-fourth part of said judgment and all costs, and that no execution shall issue thereon until the

expiration of the time aforesaid. If within the time afore-
said the said debtor shall pay or cause to be paid the said
one-fourth part of such judgment and all costs, then the
said debtor shall have twenty-four° months, from the 1st
day of January, 1867, within which to pay one-third part
of the remainder of said judgment, and that execution
shall not issue until the expiration of the time aforesaid,
except, &c. If within the time aforesaid the said debtor
shall pay, or cause to be paid, the two installments above
specified, then execution shall not issue on such judgment
until thirty-six months from the said 1st day of January,
1867, and if said debtor shall pay, or cause to be paid,
within the time aforesaid, one-half of the remainder due on
such judgment, then execution shall not issue thereon until
forty-eight months from the said 1st day of January, 1867."
The other provisions of this act it is deemed unnecessary
to notice, as they do not affect the points arising in this
case.

The clerk of the district court of Galveston county, be-
lieving that he had no power or authority to issue an exe-
cution, except in accordance with this act, refused so to do,
and the relators, considering said act to be contrary to that
provision in the constitution of 1845 and 1865, article I,
section 14, prohibiting the legislature from making any law
impairing the obligation of contracts, obtained the writ of
*mandamus;* and the very able and learned arguments of the
distinguished counsel who have conducted this cause, both
for the plaintiffs and defendant, have tested the validity of
the law by this provision of the constitution, and we con-
ceive that this is the question at issue.

As the Constitution of the United States contains the
same inhibition in article I, section 10, that "no state shall
pass any law impairing the obligation of contracts," and
as questions have heretofore frequently arisen which have
called upon the courts of the different states, as well as the
Supreme Court of the United States, to adjudicate upon

the meaning of this section, the subject seems to be well-nigh exhausted. And since the conflicting opinions of the different courts cannot be reconciled with each other, it will be our duty to select from those different and conflicting views what we deem the true one.

The editors of the American Law Register, (vol. 5, page 91,) in their comments on these different decisions, have divided them into three classes. One class maintains that the obligation of a contract, legally regarded, consists in the remedy which the law gives to enforce it; and, as a consequence, the efficiency of the remedy cannot be changed without thereby impairing the obligation. Another class broadly distinguishes between "obligation" and "remedy," and maintains that the remedy may be changed or even wholly taken away by the legislature without contravening the Constitution of the United States. But the prevailing view is a middle one between these extremes, and asserts the doctrine, that the remedy may be changed in the regular and ordinary course of legislation, provided it be not destroyed, or the rights which existed in favor of the creditor, at the time the contract was made, are not substantially interfered with, seriously embarrassed, or defeated.

In relation to the first class, that assert the broad proposition that the obligation of a contract, legally considered, consists in the remedy which the law gives to enforce it, and, as a necessary consequence, the remedy cannot be impaired without at the same time and to the same extent impairing the obligation, we consider that the practical effect of this would be to entirely take away from the legislature the right to make such salutary and necessary changes in legislation as the public policy of the state might really require. The supreme court of Kentucky has taken this ground in Blair v. Williams, 4 Littel, 34, and McKinney v. Carrol, 5 Monr., 98.

While we do not concur in this proposition to the extent

decided in the above cases, we are at the same time equally opposed to the opposite extreme, which provides that the remedy for a party may be essentially changed or wholly taken away by the legislature without contravening the provision of the constitution, as decided in the cases of Read v. Frankford Bank, 10 Shep., 318; 6 Shep., 109; Woods v. Buic, 5 How., (Miss.,) 285; Evans v. Montgomery, 4 W. & S., (Penn.,) 218; Iverson v. Shorter, 9 Ala., 713; Fisher v. Lackey, 6 Black, 373.

It is difficult to perceive the reason of engrafting this provision in the constitution, both of the state and the United States, if this construction of it is to be applied, as the courts are never called upon for assistance except to apply the remedy after the contract has been broken. A judgment upon a note is still a debt of record. And if the legislature can take away all remedies and deny any rights, whenever a party refuses to comply with a contract, it can virtually destroy it.

It will be recollected that the constitution of the Republic of Texas contains the same provision, using the same words, in the 16th of the declaration of rights. The legislature of 1838, 1839 (Paschal's Dig., Art. 3798) passed an act exempting from execution a certain amount of property, but, as is supposed, lest it might be liable to conflict with the constitution, it expressly provided, that "the passage of this act shall not interfere with contracts heretofore made." Article VII of the constitution of Texas, section 22, both of 1845 and 1866, providing for the exemption of a homestead, &c., limits the exemption to debts thereafter contracted; from which it is inferable that the makers of both constitutions considered that the legislature could not make the exemption except prospectively. At the time the contracts were made, the violation of which was the foundation of the suit in the case out of which the cause at bar originates, the execution law required all sums on which judgment had been entered to be collected in six

months. The contracts were made with reference to that law, and tacitly formed a part of the same; and had the district court act for the collection of debts, together with the execution law, then in force, been drawn up and signed by the parties, stating that the remedies for the violation of the contract should be as therein set forth, the legal condition and construction of the notes and mortgage, as well as the obligation on the part of the state authorities to furnish the remedy, would be just what they now are. By the law then in force the whole sum was required to be collected in six months after judgment. The act of 10th November, 1866, entitled "An act regulating the collection of debts," provides that the judgment may be paid in four equal annual installments. And it thus appears that the legal obligation as to the time of performing the contract has been changed from six months to one, two, three, and four years. To delay justice is, *pro tanto,* to deny it.

In Bronson v. Kinzie, 1 How., 311, the court say: "Whatever belongs to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract itself. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution."

We have cited this one case simply, not because it is the only one, or because it was in this case that the doctrine therein stated was so declared for the first time. The authorities referred to will show conclusively that this was an affirmance of what the same court, composed of different judges, had years before settled and reaffirmed. What a court composed of a MARSHALL, a STORY, and their associates, has declared to be law, affirmed to be such by the same court, consisting of a TANEY and associates, by its very weight of authority ought not to be disregarded. But when we take into consideration that this decision was made long before the Republic of Texas had surrendered

her nationality to the United States and became one of the component parts thereof, and was known to be such by the prominent men who formed our constitution at the time of annexation, we adopted with the Constitution of the United States the construction of it by its courts. Because, also, a writ of error will lie to the Supreme Court of the United States on this case, should we decide adversely to this construction of the Constitution of the United States. That court is our superior herein, and we are bound to obey its decisions as such superior. Thus, by our own judgment, by the weight of authority, by the assent of the state, so to consider it, and by the fact that the decision of the Supreme Court of the United States upon the question at bar is obligatory upon us till reversed or overruled by the same court,—by each and all of these reasons are we bound, and they all accord.

We have been apprized by the defendant's attorney of the pecuniary situation of the people of this state, and that there is a real necessity for the stay law. We have had appeals made to our sympathies, and reminded of historical incidents showing what distinguished men in antiquity did. In fact, we have been addressed as if we had power not only to make laws, but to make them in defiance of not only the constitution of this state, but of the United States. We have been told that "the safety of the people is the supreme law."

To this principle we entirely concur, though not in the sense intended. The "supreme law" is the constitution of the United States and this state, and the safety of the people consists in the faithful performance of each and all their requirements. There is no doubt with us that there are instances in which the execution law of 1860 would work a hardship, and perhaps it would be difficult to frame any law that does not do so in some cases. The laws of God or nature, as witnessed in the laws of combustion, gravitation, or respiration, furnish daily instances of appa-

rent and real distress to certain parties. But should the general laws of combustion be suspended because our dwellings are in flames, or the laws of gravitation because a train of cars are thrown over a precipice, it might be a real benefit to particular parties interested at the time, but there is no system of arithmetic by which we could calculate the injury of even a temporary suspension of these natural laws. And we might add, that, as in the natural, so in human laws, one of their great excellencies consists in their certainty. And as in the physical world storms and hurricanes will sometimes cause our cities and fields to be submerged, unless we levee embankments that can withstand the rising flood, and say, thus far and no farther rage, so in the body-politic legislative hurricanes may sweep away our dearest rights, if the constitution, wisely framed, and expressly designed to repel them, shall not be interposed as a barrier. We do not agree with the distinguished counsel that distress would prevail should debts be rigidly collected. By the act of 10th November, 1866, entitled "An act to except certain property therein named from forced sale," there is protected from execution "two hundred acres of land, including the homestead, or any town or city lot or lots in value not exceeding $2,000 at the time of their designation as a homestead, (nor shall the subsequent increase in the value of the homestead, by reason of improvements or otherwise, subject the same to forced sale,) household and kitchen furniture of the value of $500, all implements of husbandry, all tools, apparatus, and books belonging to any trade or profession, five milch cows, two yoke of work oxen, two horses, one wagon, twenty hogs, twenty head of sheep, and one year's supply of provisions, all saddles, bridles, and harness necessary for the family." [Paschal's Dig., 2d ed., Art. 3802 *a*.] These exemptions are made by virtue of the provisions of the constitution, and are therefore secure. The constitution of the United States authorized the Con-

gress thereof to establish uniform laws on the subject of bankruptcy throughout the United States, and the Congress has passed such laws, and by these laws all debts can be extinguished, and the debtors remain in undisturbed possession not only of all the property exempt from execution, but of all that by industry may hereafter be acquired. We are of opinion that the framers of the constitutions of 1845 and 1866, by requiring the judges of the district courts to hold their courts in each county at least twice in each year, and by giving the jurisdiction as hereinbefore stated, contemplated that the legislature should not pass such stay laws as would virtually nullify the judgments of the courts. And we further believe, that the property exempt from execution, as provided by the constitution and laws, was considered by the framers of the constitution as sufficient for all the purposes of necessity and industry, and that debtors had no right to retain from their creditors any other property. And we further consider, that the laws in force at the time the contract was made, upon which the judgment that constitutes the foundation of this action was based, were a part and parcel of the contract, and that the creditor had a right to have such an execution as would not materially and essentially differ from the one as then provided by law. And we further consider, that the act of 10th November, 1866, chapter CXXV, does impair the obligation of the contracts, is in contravention of the constitution of this state and of the United States, as expounded by the Supreme Court thereof before the Republic of Texas merged its nationality into that of the United States, and is void. The judgment is

                                          AFFIRMED.