ACCEPTED
15-25-00009-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 11:07 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 11:07:57 PM
CHRISTOPHER A. PRINE
Clerk

Court of Appeals Number: 15-25-00009-CV

_____

IN THE COURT OF APPEALS FOR

THE FIFTEENTH JUDICIAL DISTRICT OF TEXAS

**SAMMY TAWAKKOL**,

*Appellant,*

v.

**SHEILA VASQUEZ**, in her Official Capacity as Manager of the Texas Department of Public Safety- Sex Offender Registration Bureau; and,

**FREEMAN F. MARTIN**, in his Official Capacity as Director of the Texas Department of Public Safety;[*]

*Appellees*

_____

**REPLY BRIEF OF APPELLANT**

_____

RICHARD GLADDEN
State Bar No. 07991330
1204 West University Dr., Ste. 307
Denton, Texas 76201
940/323-9300 (Voice)
940/539-0093 (Fax)
richscot1@hotmail.com (email)
ATTORNEY FOR APPELLANT

**APPELLANT REQUESTS ORAL ARGUMENT**

_____

[*] Steven McCraw, who in his official capacity as Director of the Texas Department of Public Safety was previously a named defendant in this case, was succeeded by Freeman F. Martin on December 2, 2024. In accordance with Rule 7.2(a) of the Texas Rules of Appellate Procedure, Director Freeman has been automatically substituted in Director McCraw's place on this appeal.

# TABLE OF CONTENTS

**Page**

Table of Contents………………………………………………... i

Index of Authorities……………………………………........ iii

I.  Reply Argument:

a) *The Appellees' Failure to Acknowledge (or Inability to Understand) the Difference between a Judgment of Dismissal for "Lack of Jurisdiction," and a Dismissal "on the Merits," Constitutes Error*.

…………………………………………… 1

b) *In the Absence of a Prior Judgment "on the Merits," neither* <u>*Res Judicata*</u> *nor Collateral Estoppel bar Appellant's Claims for Equitable Relief under Texas Law*.

………………………………………… 2

c) *The Trial Court had Jurisdiction to Consider and Decide Appellant's "Cause of Action" for Equitable Relief*.

………………………………………… 4

   1) *A Trial Court's Equitable Jurisdiction does not Depend on the Existence of a "Statutory Cause of Action."*

………………………………………… 4

2) *The Appellant Adequately Alleged an <u>Ultra Vires</u> Claim against Appellees*.

…………………………………………... 6

3) *The "Grievance" and Violation of a Cognizable Rights Alleged by Appellant.*

………………………………….................. 7

A) *The Right to "Reputation"* ………………………………... 7

B) *"Altered Legal Status"* ………………………………….. 10

d) *Prior to the Bench Trial before the U.S. District Court, Appellant did not Receive Notice or an Opportunity to be Heard from Either the Military Court nor from Appellees Related to their <u>Ex Parte</u> Determination that Appellant was Required to Register.*

…………………………………………… 11

Prayer…………………………………………………….. 12

Certificate of Compliance…………………………………... 12

Certificate of Service……………………………………….. 13

# INDEX OF AUTHORITIES

**<u>Cases:</u>**                                                                                  **<u>Page</u>**

*Carroll v. Safford*, 44 U.S. (3 How.) 441 (1845)…………………….  6

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)……………  6

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)………………...  10

*Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648 (E.D.Tex. 2004).
………………………………………………………………. 10

*Doe v. Dep't. of Pub. Safety*, 271 F.3d 38 (2nd Cir. 2000)……………..  10

*Doe v. Pataki*, 3 F. Supp. 2d 456 (S.D.N.Y 1998)……………………..  10

*Doe v. Pryor*, 61 F. Supp.2d 1224 (M. D. Ala. 1999)…………………  10

*Doe v. Williams*, 167 F. Supp.2d 45 (D. D.C. 2001)…………………..  10

*Gwinn v. Almiller*, 354 F.3d 1211(10th Cir. 2004)……………………..  10

*Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir. 2000)……………………..  1

*Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78 (Tex. 2008).   2

*Jones v. McMahan*, 30 Tex. 719 (1868)…………………………………  5

*State v. Germane*, 971 A.2d 555 (R.I. 2009)…………………………..  10

*State v. Norman*, 808 N.W.2d 48 (Neb. 2012)…………………………  10

*State v. Robinson*, 1873 So. 2d 1205 (Fla. 2004)………………………  10

*Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796 (Tex. 1994)….  3

*Tawakkol v. Vasquez*, No. 1:19-cv-00513-LY, 2022 WL 20564755 (W.D. Tex. March 9, 2022).
…………………………………………... 11

*Tawakkol v. Vasquez*, 87 F.4th 715 (5th Cir. 2023)……………………. 2

*Tawakkol v. Vasquez*, No. 1:19-cv-00513-RP (W.D. Tex. Feb. 7, 2024).
…………………………………………... 2

*Warnock v. Pecos Co.*, 88 F.3d 341 (5th Cir. 1996)……………………. 1

*W. P. v. Poritz*, 931 F. Supp. 1199 (D. N. J. 1996)……………………. 10

**Statutes, Codes, Rules, and Constitutional Provisions:**

Section 16.064 (a). Texas Civil Practice and Remedies Code………… 3

Rule 12, Federal Rules of Civil Procedure……………………………. 1

Article I, §13, Texas Constitution………………………………………... 8

**Other Sources**:

*The Austin Papers*, in 2 *Annual Report of the American Historical Association* (Eugene C. Barker, ed., 1924).
…………………………………... 7

Eugene C. Barker, *The Life of Stephen F. Austin* (De Capo Press, 1968).
……………………………………………. 8

Eugene C. Barker, *The Life of Stephen F. Austin*, 73, (2nd ed., 2010, Texas State Historical Association, publisher).
…………………………………... 7

1 William Blackstone, *Commentaries on the Laws of England* (3rd American rev. ed. 1884)(Thomas M. Cooley, ed.).
………………………………… 9

Samuel L. Bray & Paul B. Miller, *Getting Into Equity*, 97 Notre Dame L. Rev. 1763 (2022).
………………………………………………… 5, 6

George C. Butte, *Early Development of Law and Equity in Texas*, 26 Yale L. J. 699 (1917).
…………………………………………………... 5

Edward Coke, *Second Part of the Institutes of the Laws of England* (1641).
…………………………………………………. 9

David B. Edward, *The History of Texas* (Texas State Historical Association *reprint*, 1990).
………………………………………………… 8

Thomas R. Phillips, *The Constitutional Right to a Remedy*, 78 N.Y.U. L. Rev. 1308 (2003).
…………………………………………………. 9

\*\*\*\*\*\*\*

## REPLY BRIEF OF APPELLANT

TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES OF THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT OF TEXAS:

## I.

## APPELLANT'S REPLY ARGUMENT

**a)** *The Appellees' Failure to Acknowledge (or Inability to Understand) the Difference between a Judgment of Dismissal for "Lack of Jurisdiction," and a Dismissal "on the Merits," Constitutes Error.*

The Appellees ("Defendants") assert the judgment of the U.S. Court of Appeals remanding Appellant's ("Plaintiff's") federal claims to the U.S. District Court, as well as the U.S. District Court's judgment dismissing Plaintiff's federal claims on remand, each constituted "prior final judgment[s] on the merits by a court of competent jurisdiction."[1] Yet, as these two prior judgments plainly disclose on their face, Plaintiff's federal claims were dismissed precisely because,

---

[1] *Appellees' Brief*, 8 (filed June 4, 2025). Technically, only the U.S. District Court's judgment on remand constituted a dismissal of Appellant's federal claims, as federal rules require that plaintiffs be granted an opportunity to amend their pleadings after dismissal under Rule 12 of the Federal Rules of Civil Procedure. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *Warnock v. Pecos Co.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) *and not with prejudice*.") (emphasis added).

1

in these courts' view, they *were not* "courts of competent jurisdiction." *Tawakkol v. Vasquez*, 87 F.4th 715, 719 n. 3 (5th Cir. 2023) ("Because we conclude that Tawakkol's suit is barred by sovereign immunity, we VACATE and REMAND with instructions to dismiss for lack of jurisdiction."); *id*., 87 F.3d at 719 n. 3 ("Because we decide this case on jurisdiction, we do not address the merits of [the District Court's] determination" that Plaintiff is not required to register as a sex offender under the Uniform Code of Military Justice].");  *see also*, U.S. District Court's order of dismissal on remand (included within State District Clerk's Record on Appeal in the instant case, 46), *Tawakkol v. Vasquez*, No. 1:19-cv-00513-RP (W.D. Tex. Feb. 7, 2024) ("this case is DISMISSED for lack of subject matter jurisdiction based on sovereign immunity.").

**b)** ***In the Absence of a Prior Judgment "on the Merits," neither <u>Res Judicata</u> nor Collateral Estoppel bar Appellant's Claims for Equitable Relief under Texas Law***.

As the Defendants themselves concede, to prevail on their defensive claim of *res judicata*, they were required to demonstrate in the Trial Court that a prior final judgment on the merits by a court of "competent jurisdiction."[2] Furthermore, a party seeking to assert the bar of collateral estoppel, such as Defendants, must establish, *inter alia*, that (1) the facts sought to be litigated in the second action

---

[2] *Appellees' Brief*, 9-10, citing *Igal v. Brightstar Info. Tech. Group, Inc*., 250 S.W.3d 78, 86 (Tex. 2008).

were fully and fairly litigated in the first action; and (2) those facts were essential to the judgment in the first action. *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

Because the prior federal judgments plainly disclose on their face that Plaintiff's federal claims were dismissed precisely because they were not before a "court of competent jurisdiction," the Defendants' assertion of *res judicata* must be overruled by the Court of Appeals, and should have been overruled by the State Trial Court in this case. Additionally, while the "facts" underlying Defendant's claims (as alleged in both federal and the state court District Court below) were "fully and fairly litigated" at a Bench trial before the U.S. District Court (wherein Appellant prevailed); the "facts" determined by the U.S. District Court at the Bench trial were not "essential to the [final] judgment in the first action." *Sysco Food Services, Inc. v. Trapnell, supra*, 890 S.W.2d at 801. The U.S. Court of Appeals' ruling (finding Defendants' entitlement to federal sovereign immunity) constituted a legal conclusion that rested on the *facts alleged* by Plaintiff, not on the *facts determined* by the U.S. District Court.

Furthermore, as Plaintiff has previously discussed in his opening brief,[3] the Texas Legislature, by enactment of Section 16.064 (a) of the Texas Civil Practice and Remedies Code, has abrogated any common law defense to collateral estoppel

---

[3] *Appellant's Brief*, 12-13.

that would benefit Defendants in this case. For these reasons Defendants' defense of collateral estoppel should likewise have been overruled by the state Trial Court, and it was error for the Trial Court not to do so.

**c)** ***The Trial Court had Jurisdiction to Consider and Decide Appellant's "Cause of Action" for Equitable Relief***.

The Defendants also contend the Trial Court properly dismissed Plaintiff's state-law claims because Plaintiff "lack[s] of any statutory cause of action";[4] because he "extrajurisdictional sex offenders…are not provided any cause of action under Texas law to challenge" Defendants' determination to impose sex offender registration requirements;[5] and similarly, because "[t]here is no cause of action provided under Texas law to challenge 'extrajurisdictional' registration."[6] Each of these contentions by Defendants must be rejected. As discussed below, the Plaintiff's claims sound in equity, where no "statutory cause of action" is required to establish jurisdiction, and Plaintiff has pleaded an equitable cause of action that entitles him to relief.

**1)** ***A Trial Court's Equitable Jurisdiction does not Depend on the Existence of a "Statutory Cause of Action."***

---

[4] *Appellees' Brief*, 7.
[5] *Appellees' Brief*, 9.
[6] *Appellees' Brief*, 15.

As a result of the ratification of the Texas Constitution in 1845, the distinct concepts of "law" and "equity" jurisdiction were merged, and Texas District Courts were thereby vested with "jurisdiction in all suits whatever, without regard to any distinction between law and equity." *Jones v. McMahan*, 30 Tex. 719, 728 (Tex. 1868); *see also*, generally, George C. Butte, *Early Development of Law and Equity in Texas*, 26 Yale L. J. 699 (1917). In the present case, Plaintiff's claims and the relief he seeks are solely in equity; and, as one scholar has noted, "[i]t is a mistake, or at least conducive of a mistake, to refer to 'causes of action' in equity." Samuel L. Bray & Paul B. Miller, *Getting Into Equity*, 97 Notre Dame L. Rev. 1763, 1776 (2022) ("*Getting Into Equity*").

The historical reason why no "cause of action" (technically speaking) is required to secure equitable relief (much less a "statutory" cause of action as Appellees contend) is because the decisional law of England prior to 1845, from which Texas incorporated equity jurisdiction into its constitution, recognized that…

> "Equity is not a creature of statute, and the different kinds of claims [which equitable courts] would hear were not and are not sharply distinguished from each other (as the forms of action were). And these claims [were] usually not traceable to other authority. They developed out of the decisions of the chancellors, especially in the seventeenth and eighteenth centuries as equity developed a stronger sense of precedent."[7]

---

[7] *Getting Into Equity*, *supra*, 97 Notre Dame L. Rev. at 1773.

In other words, under 19th-century English jurisprudence:

> "[I]t was unnecessary for equity to have a 'cause of action' in the sense of a legal entitlement to sue. A plaintiff might have a statutorily specified right to sue in equity, but no one would ever have thought that she had to have a statutorily specified right."[8]

To be sure, in order to invoke a court's equity jurisdiction a plaintiff today is required to allege a "grievance" that is subject to, and that can be remedied by, equitable relief.[9] In the present case, as discussed below, Plaintiff has alleged a grievance subject to remedial equitable relief as exemplified by Texas jurisprudence, and the Trial Court erred when it ruled otherwise.

**2) *The Appellant Adequately Alleged an <u>Ultra Vires</u> Claim against Appellees*.**

Although most prevalent in the context of discerning the scope of sovereign immunity under Texas law (as distinguished from sovereign immunity under federal law), the *ultra vires* doctrine in Texas does not depend on a plaintiff having a "statutory" cause of action. Rather, Texas decisions discussing the *ultra vires* doctrine, for example, have stated more broadly that "a claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009). When a valid "grievance" and

---

[8] *Id*., 97 Notre Dame L. Rev. at 1774. In the context of federal jurisdiction, the U.S. Supreme Court has long adhered to this rationale with regard to the availability of equitable relief. *Carroll v. Safford*, 44 U.S. (3 How.) 441, 463 (1845) ([W]e entertain no doubt, that, in a proper case, relief may be given in a court of equity…to prevent an injurious act by a public officer, for which the law might give no adequate redress.").

[9] *Getting Into Equity*, *supra*, 97 Notre Dame L. Rev. at 1775.

harm is demonstrated by a plaintiff, such equitable relief is available to the plaintiff under the *ultra vires* doctrine regardless of whether the legislature has created a specific, "statutory" cause of action that forms the basis of a claim for relief.

**3)** ***The "Grievance" and Violation of a Cognizable Rights Alleged by Appellant.***

The harms that Plaintiff has alleged certainly qualify as "grievances" cognizable by a court in equity. The "sex offender" designation that Defendants have imposed on Plaintiff not only severely affects his reputation adversely, but the designation itself "alters his legal status" in the community.

**A)** ***The Right to "Reputation"***

The reputational aspects of the harm to Plaintiff under Texas law could not conceivably run deeper. In 1823, on behalf of the so-called original "Old 300" who would settle his colony at St. Felipe, Texas, Stephen F. Austin drafted a proposed constitution which he hoped would be included in the 1824 constitution of the Republic of Mexico. Austin's proposed constitution would have guaranteed a "rimidy" [sic] for harm to one's "character" by the government.[10] And prior to the Texas revolution of 1836, when Texans sought to establish their territory as a

---

[10] *The Austin Papers*, in 2 *Annual Report of the American Historical Association*, 601, 602 (Eugene C. Barker, ed., 1924) (emphasis added). As indicated by the title assigned to this plan by Austin, and as observed in the second edition of Professor Barker's seminal biography on Austin, this provision was included in a constitution that Austin proposed for adoption by the Republic of Mexico in 1823. *See*, Eugene C. Barker, *The Life of Stephen F. Austin*, 73, (2nd ed., 2010, Texas State Historical Association, publisher).

separate state within the Republic of Mexico apart from Coahuila in 1833, they adopted a constitutional provision which recognized a constitutionally protected liberty interest in "reputation." Thus, as adopted by the Texas constitutional convention of 1833, and as submitted to the Congress of the Mexican Republic for approval, one provision of Texas' proposed constitution recognized that "every man, for injury done him in his lands, goods, or *reputation*, shall have remedy by due course of law" (emphasis added).[11]

The literal text of Texas' constitutional provision as it currently appears in Article I, §13 of the Texas Constitution ("Section 13") contains both a "procedural" guarantee (sometimes referred to as the right to "Open Courts") and a "substantive" recognition of a person's fundamental right to "reputation." The historical origins of Section 13 that preceded the Texas experience in constitution-making establish, even further, the fundamental nature of the latter substantive right to "reputation."

As observed by Thomas R. Phillips, former Chief Justice of the Texas Supreme Court, the text of Section 13 can be traced to Magna Carta, and more

---

[11] This provision, which was designated as Article 14 of the Texas Constitution of 1833, was reprinted in 1836 by David B. Edward, in his *The History of Texas*, 197 (Texas State Historical Association reprint, 1990). A copy of this constitution, transcribed from its original publication in the New Orleans *Commercial Bulletin* in 1833, is available online at: https://tarlton.law.utexas.edu/c.php?g=819103&p=5845633 (last visited June 23, 2025). The context in which this constitution was adopted is recounted in Eugene C. Barker, *The Life of Stephen F. Austin*, 417-419 (De Capo Press, 1968).

directly, to Edward Coke's interpretation of Magna Carta in his landmark work

*Second Part of the Institutes of the Laws of England* (1641).[12] There, Coke stated:

> "[E]very act of parliament made against any injury, mischief, or grievance doth either expressly, or impliedly give a remedy to the party wronged, or grieved: as in many of the chapters of this great charter appeareth; and therefore he may have an action grounded upon this great charter.
>
> ****
>
> "[E]very subject of this realme, for injury done to him in bonis, terris, vel persona, by any other subject, be he ecclesiastical, or temporall, free, or bond, man, or woman, old, or young,  be he outlawed, excommunicated, or any other without exception, may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay."[13]

In 1765, on the basis of then-extant English law, William Blackstone concluded "[t]he right to personal security" included "a person's legal and uninterrupted enjoyment of his…reputation." 1 Blackstone, *Commentaries on the Laws of England*, *129 (3rd American rev. ed. 1884)(Thomas M. Cooley, ed.). As Blackstone further explained:

> "The security of [one's] reputation or good name from the arts of distraction and slander, are rights to which every man is entitled, by reason and natural justice; since without these, it is impossible to have the perfect enjoyment of any other advantage or right."[14]

---

[12] Thomas R. Phillips, *The Constitutional Right to a Remedy*, 78 N.Y.U. L. Rev. 1308, 1310, 1311 (2003).

[13] Edward Coke, *Second Part of the Institutes of the Laws of England*, *55 (1641).

[14] 1 Blackstone, *Commentaries on the Laws of England*, *supra,* at *134.

**B)** *"Altered Legal Status"*

As numerous federal and state courts have concluded, the official designation of a person as a "sex offender" seriously alters the "legal status" of the person so classified as a "sex offender" because such a designation imposes legal obligations, duties and disabilities not shared in common with the rest of the citizenry.[15] The Defendants' suggestion that their wrongful "sex offender" determinations are judicially unreviewable, and beyond the scope of equitable relief, even when they "excee[d] the bounds of his granted authority,"[16] should be condemned.

---

[15] *W. P. v. Poritz*, 931 F. Supp. 1199, 1219 (D. N. J. 1996)(finding "alteration of legal status" based on the "continuing legal status as a registrant and the duties imposed as a result").; *Doe v. Pataki*, 3 F. Supp. 2d 456, 467-68 (S.D.N.Y 1998)(same); *Doe v. Pryor*, 61 F. Supp.2d 1224, 1231-1232 (M. D. Ala. 1999)("like the law struck down in *Constantineau*, the Community Notification Act deprives the plaintiff of rights previously held under State law"); *Doe v. Williams*, 167 F. Supp.2d 45, 53-54 (D. C. Cir. 2001)("There can be no doubt that these obligations and attendant penalties alter the legal status of a sex offender at least as significantly as any burden imposed in *Constantineau*"); *Gwinn v. Almiller*, 354 F.3d 1211, 1223-1224 (10th Cir. 2004)("classification as a sex offender outside the prison walls implicated a liberty interest"); *State v. Robinson*, 1873 So. 2d 1205, 1213-1214 (Fla. 2004); *Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648, 665 (E.D.Tex. 2004)("By requiring Creekmore to register, defendants distinctly altered his status"); *State v. Germane*, 971 A.2d 555, 578 (R.I. 2009); *State v. Norman*, 808 N.W.2d 48, 62-63 (Neb. 2012); *Doe v. Dep't. of Pub. Safety*, 271 F.3d 38, 57-60 (2nd Cir. 2000)("The requirement that sexual and other offenders register with the State -- a requirement that can only be imposed by the State and that is a necessary predicate for the stigmatizing publication of the registry -- places this case in th[e] [stigma plus] category"), *rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003)(not reaching question of whether respondent held a "liberty interest," but ruling a person *who has been convicted* of a sex offense is entitled to no additional procedural due process).
[16] *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

**d)** ***Prior to the Bench Trial before the U.S. District Court, Appellant did not Receive Notice or an Opportunity to be Heard from Either the Military Court nor from Appellees Related to their <u>Ex Parte</u> Determination that Appellant was Required to Register.***

Finally, Defendants assert Plaintiff's equitable claims must be dismissed because he "already received due process" at his court martial concerning whether he is legally required, under either federal or Texas law, to register as a "sex offender."[17] In this regard, Defendants inaccurately describe the record. As a factual matter the U.S. District Court, following the Bench trial, found:

> "At the time of Tawakkol's plea, the presiding military judge ensured Tawakkol was aware that he 'may have to register as a sex offender.' The military judge made no formal or definitive finding of fact or conclusion of law concerning whether Tawakkol was required to register as a sex offender under any state or federal law, including the federal Sex Offender Registration and Notification Act."[18]

As further alleged by Plaintiff in the original petition dismissed by State Trial Court (from which this appeal has been taken), the harms to Plaintiff do not derive (and never have derived) from his conviction at his court martial.[19] Instead, the critical fact, and the fact that Defendants attempt to evade, is that the harms experienced by Plaintiff have been (and will be) caused directly and solely by

---

[17] *Appellees' Brief*, 9.

[18] *Tawakkol v. Vasquez*, No. 1:19-cv-00513-LY, 2022 WL 20564755, at *1 (W.D. Tex. March 9, 2022).

[19] *Appellant's Verified Original Petition* (State District Clerk's Record on Appeal, 6-7).

11

Defendants' own *ex parte, ultra vires* acts that "exceed[ed] the bounds of [their] granted authority."[20] Again, "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority."[21]

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellant/Plaintiff prays the District Court's final judgment in this case will be reversed, and that this case will be remanded for further proceedings consistent with the applicable law provided in his briefs on this appeal.

Respectfully submitted,

*/s/Richard Gladden*
State Bar No. 07991330
Law Office of Richard Gladden
1204 West University Dr., Ste. 307
Denton, Texas 76201
940/323-9300 (Voice)
940/539-0093 (Fax)
richscot1@hotmail.com (email)
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

This is to certify that, pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, this brief was computer-generated; that it contains less than 2,405 words (*including* the items excepted by Tex.R.App.P. 9.4(i)(1)); and that it

---

[20] *Houston Belt & Terminal Ry. Co. v. City of Houston*, *supra*, 487 S.W.3d at 158.
[21] *Ibid.*

12

therefore complies with the 7,500 word limitation stated in Rule 9.4(i)(2)(C) of the Texas Rules of Appellate Procedure.

*/s/Richard Gladden*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on both the Attorney of Record for the Appellees, **Christopher Lindsey**, Assistant Solicitor General of Texas, by use of the electronic service provider available at, and in accordance with, www.efiletexas.gov, and Rule 9.5 of the Texas Rules of Appellate Procedure, on this 23rd day of June, 2025.

*/s/Richard Gladden*

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Richard Gladden
Bar No. 07991330
richscot1@hotmail.com
Envelope ID: 102331456
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Reply Brief
Status as of 6/24/2025 7:06 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Gladden | | richscot1@hotmail.com | 6/23/2025 11:07:57 PM | SENT |
| Christopher Lindsey | 24065628 | Christopher.Lindsey@oag.texas.gov | 6/23/2025 11:07:57 PM | SENT |
| Terri Sparks | | terri.with.gladdenlaw@gmail.com | 6/23/2025 11:07:57 PM | SENT |
| Eric Abels | | Eric.Abels@oag.texas.gov | 6/23/2025 11:07:57 PM | SENT |
| Nicholas Larkin | | nicholas.larkin@oag.texas.gov | 6/23/2025 11:07:57 PM | SENT |